OFFICE OF THE GENERAL COUNSEL
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
THOMAS C. LEE (SBN 104624)
VICTORIA R. NUETZEL (SBN 115124)
300 Lakeside Drive, 23rd Floor West
Oakland, CA  94612-3534
Tel:  (510) 464-6023
Fax:  (510) 464-6049
EMAIL:  VNUETZE@BART.GOV

Attorneys for Defendant
San Francisco Bay Area Rapid Transit District

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| PAUL MELKER,<br><br>        Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>        Defendant. | Case No.:  C07-03762 MMC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (FRCP Rule 56)<br><br>DATE:  June 27, 2008<br>TIME:    9:00 a.m.<br>COURTROOM: 7 |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| STATEMENT OF RELIEF REQUESTED | …………………………… | 1 |
| PRELIMINARY STATEMENT | …………………………………… | 1 |
| STATEMENT OF FACTS | …………………………………… | 2 |
| ARGUMENT | …………………………………………… | 6 |
| A. BART discharged plaintiff for a legitimate, non-discriminatory reason. | …………………………………………… | 6 |
| B. Plaintiff cannot establish a discriminatory motive. | …………… | 10 |
| C. Plaintiff's claims related to his post termination treatment must fail. | …………………………………………… | 12 |
| D. Plaintiff's pre-termination claims are barred. | …………… | 13 |
| CONCLUSION | …………………………………………… | 13 |

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                   Page

*Alexander v. Garner – Denver Company* ……………………………………….. 7
415 U.S. 36, 60 (1974)

*Brock v. Lucky Stores, Inc.* …………………………………………………. 8, 12
2000 U.S. DIST. LEXIS 3163 (N.D. Cal. 2000)
aff'd U.S. App. Lexis 24990 (9th Cir. 2001)

*Collins v. New York City Transit Authority* …………………………………… 9
305 F. 3d 113 (2nd Cir. 2002)

*Hersant v. Department of Social Services* ……………………………………... 2, 6, 10, 12
57 Cal.App.4th 997, 1004-05 (1997)

*Hicks v KNTV Television* ……………………………………………………. 7, 10
160 Cal.App.4th 994 (2008)

*Horn v. Cushman & Wakefield Western, Inc.* ……………………………….. 7
72 Cal.App.4th 798 (1999)

*Loggins v. Kaiser Permanente International* ……………………………….. 2
151 Cal.App.4th 1102 (2007)

*McDonnell Douglas v. Green* …………………………………………………. 6
 411 U.S. 792 (1973)

*McKay v. Occidental Chemical Company* ……………………………………….. 9, 11
956 F.Supp. 1313 (S.D. Tex. 1997)

*St. Mary's Honor Center v. Hicks* ……………………………………………... 7, 10
509 U.S. 502 (1993)

*Vargas v. Gromko* ……………………………………………………………. 2, 7, 8, 12
977 F.Supp. 996 (N.D. Cal. 1997)

<u>Statutes</u>

42 U.S.C. §2000e-5(e) …………………………………………………………. 13

Americans with Disabilities Act of 1990 (42 U.S. § 12101)   …………………... 10

Federal Rules of Civil Procedure, Rule 56 ……………………………………….. 1

Government Code § 12940 ……………………………………………………….. 1, 5, 6

Title VII of the Civil Rights Act of 1964 ………………………………………… 1, 5, 6, 7, 8

STATEMENT OF RELIEF REQUESTED

For the reasons set forth below, defendant BART respectfully requests that this Court enter an order granting summary judgment in their favor and against plaintiff and award costs of suit and such other relief as the Court may deem just and proper to BART.

PRELIMINARY STATEMENT

This is a single plaintiff employment discrimination action brought by plaintiff, Paul Melker ("Melker"), a current employee of defendant BART. Melker initially brought his action in state court alleging violation of state statutes prohibiting employment discrimination, violation of Title VII of the Civil rights Act of 1964, as amended, wrongful termination, breach of the implied covenant of good faith and fair dealing, and breach of contract. BART removed the matter to this Court and, thereafter, filed a motion to dismiss pursuant to FRCP Rule 12(b)(6) seeking dismissal of the claims for wrongful termination, breach of the implied covenant of good faith and fair dealing and breach of contract. That motion was granted resulting in dismissal of all claims other than the claims for Violation of Government Code § 12940 et. seq. and Violation of Title VII of the Civil Rights Act of 1964, as amended. By this motion, BART now seeks summary judgment of Melker's remaining claims on the grounds that, as a matter of law, BART has a legitimate, non-discriminatory bases for its actions and on the further ground that certain of the claims are time barred.

In December 2004, while employed by BART as a utility worker, Melker self-referred to BART 's substance abuse program. He entered a full time residential rehabilitation program and was immediately placed on paid administrative leave. While in the program, he executed a Rehabilitation Agreement, a standard agreement setting forth the terms of BART's substance abuse program. That agreement specified that the employee may be terminated for failure to adhere to the terms of that program and further specified that a maximum of 90 days leave was permitted.

Melker was terminated in May 2005, based on his failure to adhere to the terms of the Rehabilitation Agreement. Plaintiff filed a grievance with his union, Service Workers International Union ("SEIU"), Local 790, and the grievance was subject to arbitration. At the labor arbitration, Melker was represented by counsel, had an opportunity to present evidence, had the opportunity to

1  testify on his own behalf and to examine and cross-examine witnesses under oath. The hearing was
2  reported verbatim by a court reporter.
3     The arbitrator issued a well-reasoned written decision finding because there was some
4  confusion regarding the end date for Melker's rehabilitation leave that Melker should be reinstated.
5  The arbitrator held: "…the confusion stemming from the February 16 conference call is the principal
6  reason just cause for discharge cannot be found. Grievant shall be conditionally reinstated." Decision
7  at 18.[1]  As a result, Melker was returned to his position as a utility worker.
8     In February 2006, Melker filed a complaint of discrimination with the DFEH regarding his
9  termination. Subsequently, in January 2007, he also filed a claim with the EEOC. In the EEOC
10 complaint, Melker contends not only that the May 2005 termination was improper, but also adds
11 allegations related to his return to work and related to those layoffs that occurred in 2002 and the recall
12 in 2003. To the extent that Melker may contend that certain of his claims are related to acts that
13 occurred more than 180 days before the EEOC complaint, those claims are time barred.
14    Summary judgment is appropriate. With respect to Melker's termination and return to work,
15 the arbitrator's decision establishes that BART had legitimate business reason for its actions and the
16 burden shifts to Melker to come forward with evidence that his discharge and the conditions of his
17 return to work following the arbitration were a pretext for discrimination. *Vargas v. Gromko*  977 F.
18 Supp. 996 (N. D. Cal., 1997); see also *Hersant v. Department of Social Services* 57 Cal.App.4th
19 997,1004-05 (1997); *Loggins v. Kaiser Permanente International* 151 Cal.App.4th 1102, 1113 (2007).
20 Melker cannot meet that burden nor can he meet his preliminary burden with respect to any of his
21 additional claims.

## STAEMENT OF FACTS

23    BART initially hired Melker as a part time utility clerk in March 2001. Subsequently, in
24 September 2001, he was offered and accepted a full-time position as a utility clerk. In 2002, as a result
25 of the economic downturn, BART instituted a significant reduction in force. As a result, Melker and
26 several other Utility Workers were terminated with certain recall rights as provided in accordance with

---

[1] A copy of Arbitrator Cohn's decision is submitted in support of BART's motion as Exhibit A to the Declaration of Victoria R. Nuetzel.

1 the Collective Bargaining Agreement ("CBA") between BART and Melker's union, Service

2 Employees International Union ("SEIU"), Local 790.  Declaration of Wilbur Wong ("Wong Decl.") ¶

3 3.  Because the Utility Worker classification is substantially similar to that of a System Service

4 Worker, BART and the Union agreed that Utility Workers could be recalled to the position of a System

5 Service Worker.

6     In 2003, BART recalled certain of its Utility Workers, including Melker, to work as System

7 Service Workers.  At the time of the recall, those employees were re-classified as System Service

8 Workers and received a new seniority hire date in accordance with the provisions of the CBA.  Wong

9 Decl. ¶ 4.  The salaries of System Service Workers and Utility Workers are controlled by the CBA.

10 Both classifications receive the same salary and the same yearly step increases.  *Id.*  Melker was

11 reinstated as a System Service Worker at the salary level that he had been receiving at the time of his

12 termination.  *Id.*

13     Thereafter, in 2004, BART underwent another reduction in force.  Melker and others were

14 permitted to "bump" to positions as Utility Workers. Those employees, including Melker, were

15 reclassified as Utility Workers and given their prior seniority within that classification; their salaries

16 remained the same.  Wong Decl. ¶ 5.  Mr. Melker's seniority and salary were strictly calculated in

17 accordance with the terms of the CBA and in the same manner as all other similarly situated SEIU

18 employees.  Wong Decl. ¶¶ 4, 5, 6.

19     In December 2004, while classified as a Utility Worker, Melker contacted Margaret Saget, the

20 head of employee services, and requested self-referral to a drug and alcohol rehabilitation program.

21 Under the terms of BART's substance abuse policy, an employee may self-refer to the program and

22 will be placed on paid administrative leave during the duration of the program for a period of up to

23 ninety (90) days. Declaration of Margaret Saget ("Saget Decl.") ¶ 3, Exh. A.  Melker was immediately

24 referred to an in-treatment program and placed on paid administrative leave.  *Id.*  Melker also executed

25 a "rehabilitation agreement" which outlined the terms and conditions related to  BART's substance

26 abuse program. The agreement signed by Melker was the standard form used by BART for all

27 employees entering that program which specified that failure to adhere to the program rules could

28 result in termination.  Saget Decl. ¶ 4, Exh. B.

- 3 -

Melker initially complied with the terms of the rehabilitation agreement. He completed his in-patient treatment and commenced participation in a verified out-patient program. In early February he requested and was granted the opportunity to transfer to another, alternative, out-patient treatment program. He was, however, terminated from that program as a result of a conflict of interest with another patient. Saget Decl. ¶ 5. Thereafter, Melker became non-compliant. In early February, he was directed to take a return to work drug test. He called Ms. Saget and indicated he had relapsed. Ms. Saget agreed to extend the date for the test; however, Melker failed to take any test in February. Saget Decl. ¶¶ 6, 7.

Melker contacted his union regarding the request that he complete a return to work test and, following a conference call on February 16, 2005 among Saget, Melker and the union, Saget allowed Melker to continue on paid administrative leave with the understanding that he was to required to return to and remain in treatment. Saget Decl. ¶ 7. Thereafter, Ms. Saget was unable to verify that Melker was, in fact, in treatment. In addition, the 90-day limitation on his leave of absence was due to expire. Saget Decl. ¶¶ 8, 9. In March 2003, Ms. Saget advised Melker his leave was almost up and that he would be required to take a return to work test no later than April 7 so that he could return to work no later than April 11, 2005. Saget Decl.¶ 10. Melker failed to take the test by that date and, as a result of his failure to comply with the terms of the rehabilitation agreement, he was terminated. Saget Decl. ¶¶ 11, 12, 13.

Melker filed a grievance related to his termination. That grievance was subject to arbitration in accordance with the terms of the CBA. A neutral arbitrator heard the matter. The parties had the right to present testimony, examine and cross-examine witnesses and present legal argument. Counsel represented Melker in the proceedings. Evidence was presented by Melker demonstrating that there was some confusion relating to the final date of his administrative leave. The arbitrator determined that, although Melker had failed to comply with the terms of the rehabilitation agreement, there was confusion regarding the final date of his paid administrative leave and, based solely on that confusion, determined that the termination should be converted to a suspension without pay or benefits and Melker conditionally reinstated. Nuetzel Decl., ¶¶ 3, 4, Exh. A. Although Melker was returned to work, the arbitrator's decision clearly indicates that Melker failed to comply with the terms of the

- 4 -

1  Rehabilitation Agreement and that but for the confusion regarding the final date of his leave of

2  absence, termination was appropriate. Nuetzel Decl., ¶ 4, Exh. A, pp. 17-18.

3        In compliance with the arbitrator's decision, Melker was returned to duty as a Utility Worker.

4  Melker claimed that he should have been returned as a System Service Worker. Counsel for Melker

5  and BART submitted that question to the arbitrator who determined that Melker should be returned to

6  his prior position as a Utility Worker. Nuetzel Decl., ¶ 5, Exh. B.  In November 2006, in accordance

7  with his recall rights, Melker was reinstated as a System Service Worker. Wong Decl. ¶ 8.

8        When Melker was returned to his position as a Utility Worker, he retained his seniority as a

9  Utility Worker. When he was reinstated as a System Service Worker, he was reclassified and given his

10  seniority as a System Service Worker. This was consistent with all other System Service Workers and

11  Utility Workers and in accordance with the terms of the CBA between BART and SEIU. Wong Decl.

12  ¶ 8.

13        Following his reinstatement, Melker was paid at the same level he had been receiving at the

14  time of his termination. He was advanced to the next pay scale after he had actually worked for one

15  full year at the pay grade he had attained at the time of his termination. In determining the appropriate

16  rate of pay, Melker's suspension without pay was treated under the terms of the CBA in the same

17  manner as an employee who is laid off and reinstated. Wong Decl. ¶ 9. This was consistent with the

18  arbitrator's determination that Melker was not entitled to back pay or benefits for the time he was off

19  work and that the termination was converted to a 15-month suspension without pay. Melker has, since

20  his return to work, been paid in accordance with the terms of the CBA. Wong Decl. ¶ 10.

21        Plaintiff contends, generally, that the actions associated with his May 2005 termination and

22  certain actions following his return (the rate of pay and the position to which he was returned)

23  constitute discrimination against plaintiff as a result of his race and/or disability and otherwise created

24  a hostile work environment contrary to Cal. Gov. Code §12940 et. seq. and a violation of Title VII of

25  the Civil Rights Act of 1964. Melker contends that his termination was discriminatory and predicated

26  upon a failure to accommodate and that the position to which he returned and the rate of pay upon his

27  return was also discriminatory and a failure to accommodate. The propriety of Melker's termination

28  was directly addressed by the arbitration and establishes that BART had a legitimate business reason

- 5 -

for the termination. In addition, the arbitrator's determination of Melker's placement upon his return also establishes a legitimate business reason for that placement. As noted, Melker also asserts that his rate of pay is discriminatory and/or retaliatory. The pay rate is established by the terms of the CBA and is further predicated upon the terms of the arbitration decision, which, therefore, also establishes BART's legitimate business reason for that rate of pay.

In addition to the actions arising directly related to his termination, Melker asserts vague contentions related to his seniority and lay offs before his termination and makes additional allegations related to his treatment following his return to work. With respect to the seniority and lay off decisions that occurred in 2003 and 2004, it is clear that any and all claims related to these actions are time barred and, even if not time barred, those issues are strictly controlled by the terms of the CBA and, in all respects, BART complied with the CBA. Wong Decl. ¶¶ 3, 4, 5.

To the extent Melker contend that certain treatment he received following his reinstatement was improper or otherwise retaliatory, Melker himself admits that these incidents were dealt with by his union and ultimately resolved because he was returned to the position of System Service Worker. Nuetzel Decl., ¶ 6, Exh. C.

## ARGUMENT

Plaintiff's complaint asserts two causes of action: the first, for a violation of Cal. Gov. Code § 12940 et. seq. (FEHA claim ) and the second, for Violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII claim). Both causes of action arise from the same facts and circumstances, Melker's termination and events surrounding that termination and his return to work. As a matter of law, plaintiff cannot prevail on either claim.

A.  BART discharged plaintiff for a legitimate, non-discriminatory, reason.

Claims of employment discrimination under both the FEHA and Title VII are subject to the burden-shifting analysis articulated in *McDonnell Douglas v. Green* 411 U.S. 792 (1973).[2] Claims of

---

[2] Although state and federal laws regarding discrimination differs in some respects. The Federal law is a guide to analysis of claims under California Act because the statutes are similar. *Hersant v. Department of Social Services* 57 Cal.App.4th 997, 1002 1 (1997).

- 6 -

employment discrimination under FEHA and the federal anti-discrimination statutes (Title VII) are subject to the burden-shifting analysis. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to produce evidence of a legitimate, non-discriminatory motive for the action of which the plaintiff complains. If the defendant carries this burden of production, then the plaintiff must demonstrate that the legitimate reasons offered by the defendant are not the true reasons but a pretext for discrimination. See *St. Mary's Honor Center v. Hicks* 509 U.S. 502, 506-507 (1993) (discussing the *McDonald Douglas* shifting burden standard reversing and remanding judgment in favor of employee).

BART does not concede that Melker can meet his initial burden; however, for the purpose of this motion only, BART does not address that issue. Rather, BART's motion is predicated upon the fact that BART had a legitimate, non-discriminatory, reason for Melker's termination which shifts the burden to plaintiff to establish by <u>substantial evidence</u> that the stated non-discriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two. *Horn v. Cushman & Wakefield Western, Inc.* 72 Cal.App.4th 798, 806-07 (1999) (affirming summary judgment in favor of employer where employee fails to establish that termination was improperly motivated or given reasons were pretextual).

As noted, Melker's termination was addressed in an arbitration under the terms of the CBA. The arbitration was conducted before a neutral, jointly chosen, arbitrator; the proceedings were recorded by a certified court reporter, each party was represented by counsel and each had the opportunity to present and cross-examine witnesses. Nuetzel Decl., Exh. A. The arbitrator's findings establish that BART had a legitimate, non-discriminatory, reason for its actions and shifts the burden to Melker. *Vargas v Gromko* 977 F.Supp. 996 (N.D. Cal. 1997).

It is settled that: "[a]n arbitration decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Alexander v. Gardner –Denver Company* 415 U. S. 36, 60

- 7 -

(1974). Where the parties to the arbitration were given the opportunity to present evidence, examine and cross-examine witnesses and make arguments and * * * the proceeding were reported by a court reporter", such "procedural safeguards warrant admitting the decision as evidence." *Vargas*, supra 977 F. Supp. 997 n. 3; see also *Brock v. Lucky Stores, Inc*. 2000 U.S. Dist. Lexis 3163 (N.D. Cal. 2000) aff'd 2001 U.S. App. Lexis 24990 (9th Cir. 2001).

In *Vargas,* the defendant employer terminated plaintiff based upon threats to kill his supervisor. Plaintiff grieved that termination and proceeded to arbitration in accordance with the terms of the applicable collective bargaining agreement. The arbitrator sustained the termination. Plaintiff then proceeded to file an action in district court asserting claims under Title VII and the FEHA. Defendant employer moved for summary judgment relying upon the arbitrator's decision sustaining the termination to establish a legitimate, non-discriminatory, reason for the termination. The court granted summary judgment in defendant's favor.

Similarly, *Brock v Lucky Store, Inc, supra*, 2000 U.S. Dist. Lexis 3163, summary judgment was entered in favor of defendant who terminated plaintiff predicated upon his failure to adhere to the terms of a return to work agreement following completion of a residential rehabilitation program. The plaintiff grieved the termination and the arbitrator upheld the termination finding violation of the return to work agreement constituted just cause for the termination. *Id.*

As in *Vargas* and *Brock,* Melker grieved his termination. Although the arbitrator determined that Melker should be reinstated, he specifically found that, but for confusion regarding the return to work date, the termination would be upheld noting: " Grievant was already in violation of the Rehabilitation Agreement prior to the Union's February 16, 2004 intervention. Clearly, despite what each individual thought of the conversation, there was, at least, confusion as to the end date of the additional 90 days to be used for Grievant's rehabilitation." Nuetzel Decl., ¶ 4, Exh. A., p. 17.

- 8 -

The arbitrator then found:

> Accordingly, given the confusion as to the end date, the Arbitrator finds that Grievant, even with his record, deserves the benefit of the doubt under the just cause standard. It should be clear to all, however, that the Arbitrator does <u>not</u> ignore the fact that either failure to participate fully in a rehab program or failure to successfully complete the program is usually grounds for termination. Redundantly, the confusion stemming from the February 16 conference call as the principal reason just cause for discharge cannot be found. Grievant shall be conditionally reinstated. *Id* at pg. 18 (emphasis in original).

The arbitrator clearly determined that Melker's termination was predicated upon his failure to adhere to the terms of the Rehabilitation Agreement and to successfully complete the program. This was further confirmed by the arbitrator's award that converted the termination to a 15-month unpaid suspension, without back pay or benefits. The award demonstrates that BART had a legitimate, non–discriminatory, reason for its action. As the arbitrator noted, Melker was reinstated only because he made a showing that he was confused about the last day for his approved leave and not because BART's actions were in any way improper.

It is undisputed that the arbitration process was properly conducted according to the CBA and undisputed that the arbitrator was neutral, independent and unbiased. Where a mutually agreed upon arbitrator determines that the termination is proper, the decision is highly probative of the absence of discriminatory intent in that termination. *Collins v. New York City Transit Authority* 305 F. 3d 113, 119 (2nd Cir. 2002) (affirming summary judgment and dismissing claim for retaliation where arbitration award allowed discharge).

Plaintiff was terminated based on his failure to adhere to the terms of the Rehabilitation Agreement. Saget Decl. ¶¶ 12, 13. Even absent an arbitration decision confirming good cause for the termination, the failure to comply with a rehabilitation agreement constitutes good cause for termination. *McKay v. Occidental Chemical Company* 956 F.Supp. 1313 (S. D. Tex. 1997) (summary judgment granted where employee was terminated for failure to adhere to return to work agreement). BART has established a legitimate, non–discriminatory bases for plaintiff's termination and, therefore,

- 9 -

the burden shifts to plaintiff to establish that the termination was a pretext for discrimination.  Plaintiff cannot meet that burden.

B.     Plaintiff cannot establish a discriminatory motive.

As noted, the arbitrator's decision establishes legitimate, non-discriminatory bases for plaintiff's termination.  Under the circumstances, plaintiff,to avoid summary judgment, must offer *substantial evidence* that the stated non-discriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." *Hicks v. KNTV Television* 160 Cal.App.4th 994, 1003 (2008) citing *Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at 1004-05 (emphasis added).

"The plaintiff must do more than raise the inference that the employer's asserted reason is false. '[A] reason cannot be  proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false *and* that discrimination was the real reason.' *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. 502, 515.  If plaintiff produces *no* evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment." *Hicks v. KNTV Television, supra,* 2008 DJDAR at 3262 (emphasis in original).

Plaintiff cannot produce evidence of pretext.  Rather, Melker contends that requiring him to adhere to the terms of the Rehabilitation Agreement constitutes a failure to accommodate his disability.[3]  Melker's contention is predicated upon his allegation that he relapsed while on paid administrative leave.  Melker contends that BART failed to accommodate his disability by requiring him to comply with the terms of the Rehabilitation Agreement notwithstanding his relapse.  Nuetzel Decl., Exh. B.

---

[3]    Melker has not alleged a claim predicated upon a violation of the  Americans with Disabilities Act of 1990 (42 U.S. § 12101) and therefore this alleged failure to accommodate has no relation to his federal claims. He has , however, alleged  State Court disability discrimination claims.

- 10 -

A similar claim was asserted in *McKay v. Occidental Chemical, supra,* 956 F.Supp. 1313. Plaintiff was terminated for the violation of a return to work agreement that required him, among other things, to refrain from consuming alcohol. Plaintiff was injured in a car accident on his day off and was found to have a blood alcohol level above the legal limit. Plaintiff was terminated for violation of the return to work agreement and then filed suit alleging that the termination was a failure to accommodate his disability. The court, granting summary judgment, disagreed, noting: "The fact that Defendants terminated the Plaintiff for failing to honor the terms and conditions of his return to work agreement is a legitimate reason for their decision to terminate his employment." *Id* at 1319.  The court went on to state:

> The plaintiff was terminated because he breached the agreement not because he is an alcoholic. To attribute the termination to Plaintiff's alcoholism ignores an important element of this case. <u>The return to work agreement itself was a reasonable attempt to accommodate the Plaintiff's alleged disability</u>. Refusing to recognize that would render all return to work agreements meaningless as every breach simply would be attributed to the problems related to the alleged disability." *Id*. at 1319. (emphasis added).

Similarly, Melker contends that terminating him for failure to adhere to the Rehabilitation Agreement constitutes a failure to accommodate his disability. Melker was terminated for his failure to comply with the terms of the Rehabilitation Agreement, not because he was addicted to drugs or because he suffered a relapse. As with the agreement in *McKay*, allowing Melker to enter into the Rehabilitation Agreement was, in itself, an accommodation of his alleged disability. To require BART to further accommodate by, in effect, granting an additional 90 days unpaid leave when that employee relapses rather than requiring the employee to adhere to the terms of the Rehabilitation Agreement which allows 90 days paid administrative leave as an accommodation, would render the Rehabilitation Agreement meaningless and could potentially require BART to continue to pay and provide benefits to employees predicated upon their alleged disability *ad infinitum* as that employee continues to relapse. Such a result is clearly absurd.

Melker cannot meet his burden of proof. Absent substantial additional evidence from which a trier of fact could infer the articulated reasons for adverse employment action were untrue or

- 11 -

pretextual, BART is entitled to summary judgment as a matter of law. See, e.g. *Hersant v. Department of Social Services* 57 Cal.App.4th 997, 1004-1005 (1997).

### C. Plaintiff's claims related to his post termination treatment must fail.

In addition to his claim of wrongful termination, plaintiff alleges a number of additional actions that he contends are discriminatory. With respect to his return to work following his suspension, he contends he was returned to the wrong position and that his rate of pay was and remains improper. In addition, he asserts that when he returned to work, he was subjected to conditions that rendered his rehabilitation more difficult.

The question of the position to which Melker was returned was directly addressed by the arbitrator who retained jurisdiction to make any such determination when he rendered his decision. The arbitrator indicated that Melker was to be returned to a position as a Utility Clerk, the position to which he was returned. Nuetzel Decl. ¶ 5, Exh. B. That decision by the arbitrator establishes a legitimate, non-discriminatory, reason of this action. *Vargas*, *supra* 977 F.Supp. 997 n. 3; *Brock v. Lucky Stores, Inc., supra,* 2000 U.S. Dist. Lexis 3163.

Melker further contends that he was returned to work at an incorrect salary. Melker was reinstated at the same rate of pay he was receiving at the time of his termination. The rate of pay for both Utility Workers and System Service Workers are governed by the terms of the CBA and not discretionary. Wong Decl. ¶ 2. Melker claims that he should have received a step increase to a higher rate of pay based on the time he was off work. In essence, he contends he was entitled to receive a raise based on the period he was suspended. BART treated Melker as if he had been laid off and returned and provided him with a step increase once he has actually worked sufficient time to receive that increase. Wong Decl. ¶ 9. BART's actions were in accordance with its ordinary business practice and Melker's rate of pay always has been and remains consistent with BART's understanding of the CBA.[4]  Wong Decl. ¶ 10. The conditions of Melker's return to work were in accordance with the

---

[4] Although the arbitrator retained jurisdiction to determine any disputes arising from that ruling, Melker declined to present his dispute regarding his rate of pay to the arbitrator for decision. Because the rate of pay is strictly controlled by the provisions of the CBA, any such dispute is more appropriately the subject matter of a grievance.

- 12 -

arbitrator's ruling and in further accordance with the terms of the CBA and, therefore, for legitimate, non-discriminatory, reasons and Melker cannot demonstrate otherwise.

Melker also made vague allegations regarding the conditions of his employment upon his return to work. He, however, conceded in deposition that these concerns were addressed directly with his union and that those concerns were remedied when he bid for and was placed in an alternative position. Nuetzel Decl., Exh. C. There are no valid claims related to his working conditions.

D.   Plaintiff's pre-termination claims are barred.

In addition to the various claims asserted with respect to his termination and return to work, Melker also contends that certain actions taken with respect to his initial lay off in 2002 and 2003 return to work were, in some manner, discriminatory.[5]

Plaintiff contends that BART's lay off decisions were not in accordance with the terms of the CBA and that the seniority he was given and the change in seniority when he changed classifications were not done in accordance with his interpretation of the CBA. While these actions were done in strict accordance with the terms of the CBA and in consultation with SEIU, nevertheless any such claims are clearly barred.

These alleged discriminatory actions occurred in 2002 and 2003 but were not addressed in the EEOC charge until January 2007. A claim of discrimination must be made within 180 days of the alleged unlawful employment practice occurred. 42 U.S.C. §2000e-5(e).[6] It is undisputed that the actions complained of by Melker occurred in 2002 and 2003 since they relate to the manner in which he was laid off and returned to work. As result, these claims are clearly time barred,

## CONCLUSION

Melker has alleged a variety of alleged discriminatory actions attempting to assert claims under the EEOC and DFEH. A review and evaluations of these claims demonstrates that they are all without

---

[5] These allegation are presented only in Melker's EEOC charge dated January 25, 2007 and not as part of the DFEH complaint of discrimination and, therefore, are only at issue in the federal law cause of action.

[6] To the extent that Melker may contend that these decision were predicted on the terms of the CBA or otherwise the subject of concurrent State law claims, both of which may extend or modify the time within which a claim may be made, nevertheless under any scenario , the claims remain barred. See 42 U.S.C. §2000e-5(e)

- 13 -

merit. Melker was terminated based on his failure to adhere to the terms of a Rehabilitation Agreement. The arbitration established that BART had legitimate, non-discriminatory bases for that termination. Melker was treated fairly and appropriately and in a non-discriminatory manner and, as a matter of law, Melker cannot then meet his burden of producing substantial evidence that BART's actions were discriminatory or pretextual.

In addition to the claims related to his termination, Melker has also alleged an amalgam of claims related to his return to work and his earlier lay offs and returned recall. Melker has not demonstrated and cannot demonstrate that any of these actions were improper. To the contrary, those actions were taken in strict accordance with the terms of the CBA and verified by Melker's union. In short, Melker cannot meet his burden with respect to any of his alleged claims and, accordingly, it is respectfully requested that summary judgment be entered in BART's favor.

Dated:  May 19, 2008                    Respectfully submitted,

OFFICE OF THE GENERAL COUNSEL
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT


By _____/s/ Victoria R. Nuetzel_____
    Victoria R. Nuetzel
    Attorneys for Defendant
    San Francisco Bay Area Rapid Transit District