OFFICE OF THE GENERAL COUNSEL
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
THOMAS C. LEE (SBN 104624)
VICTORIA R. NUETZEL (SBN 115124)
300 Lakeside Drive, 23rd Floor West
Oakland, CA  94612-3534
Tel:  (510) 464-6023
Fax:  (510) 464-6049
EMAIL:  VNUETZE@BART.GOV

Attorneys for Defendant
San Francisco Bay Area Rapid Transit District

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| PAUL MELKER,<br><br>        Plaintiff,<br><br>  vs.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>        Defendant. | Case No.:  C07-03762 MMC<br><br>DECLARATION OF MARGRET SAGET IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (FRCP Rule 56)<br><br>DATE:  June 27, 2008<br>TIME:   9:00 a.m.<br>COURTROOM: 7 |

I, MARGARET SAGET, state:

1.      I am currently employed by the San Francisco Bay Area Rapid Transit District (BART) as a Principal Employee Services Representative.  I have held that position for approximately 2 and ½ years.  Before that time, I was Senior Employee Services Representative.  I am BART's internal employee assistance counselor.  I am responsible for the Violence in the Workplace Program and the Trauma Response, Workers Compensation and Disability programs.  I also administer the Substance

- 1 -

1   Abuse Program and have administered that program since 2000.  A true and correct copy of BART's

2   Substance Abuse Program, Section II- Procedures, is attached hereto as Exhibit A.

3        2.     BART's Substance Abuse Program provides, among other things, that a BART

4   employee may voluntarily refer himself/herself to the Program for treatment through the Employee

5   Services Manager.  The program also provides that in the event an employee self refers, he/she will be

6   removed from performing his/her job pending evaluation and, following evaluation, may be placed in

7   either an in-patient or out patient program.  While the employee is in the program, BART continues the

8   employee's salary and benefits provided that the employee complies with all treatment

9   recommendations and remains in the recommended treatment.  In order to participate the employee is

10  also required to sign a Rehabilitation Agreement confirming his/her agreement to abide by the program

11  rules.  The program specifies:

12  > If recommended by the Employee Services Manger for in-patient treatment, the employee will
13  > have up to 60 days to complete the rehabilitation.  The Employee Services Manager may
    > extend treatment for an additional 30 days, if indicated.   Exh. A, H.5.

14  The program also specifies:

15  > The employee must successfully adhere to the terms and conditions of the Rehabilitation
16  > Program.  If the employee violates the terms and conditions of the Rehabilitation or Return-to-
    > Work Agreement, the employee will be subject to disciplinary action in accordance with the
17  > terms of these agreements.  Exh. A, H 9.

18       3.     On or about December 2, 2004, Paul Melker came to my office requesting information

19  regarding voluntary self-referral pursuant to BART's Substance Abuse Program.  I explained the

20  program to him, performed an assessment and recommended that he participate in an in-patient

21  treatment program.  I arranged for him to be admitted to New Bridge Treatment Center and confirmed

22  that he entered that program the next day.  Mr. Melker was placed on paid administrative leave from

23  BART.  While on leave, he continued to receive full pay and benefits.

24       4.     On or about December 13, I met with Mr. Melker at the New Bridge Treatment Center

25  and provided him with a Rehabilitation Agreement.   The agreement provided to Melker was the

26  standard form used by BART for the Substance Abuse Program modified to reflect the specific facts

27  relating to Melker's treatment.  I explained the Agreement to him including the fact that he could be

28

1  terminated if he failed to comply with the terms of that Agreement.  A true and correct copy of that

2  Agreement is attached hereto as Exhibit B.

3       5.      Mr. Melker initially completed the approved New Bridge in-patient treatment program

4  (28 days) and one week of day treatment.  Thereafter, he called and requested transfer to day treatment

5  at Kaiser Oakland.  I approved that transfer.  Mr. Melker continued on paid administrative leave after

6  transferring to Kaiser's outpatient program.  Shortly following that transfer, I spoke with Mr. Melker's

7  counselor at Kaiser who informed me that Kaiser intended to discharge him from the program because

8  of relationship issues between Mr. Melker and another program participant.

9       6.      On or about February 2, 2005, I informed Mr. Melker that he should take a return to

10 work test and return to work.  At that time, to my knowledge, he was not participating in any treatment

11 program.   Several days later, Mr. Melker called me and told me he had relapsed and could not take the

12 test.  I told him to take another week to clean out his system and then take the test, which he agreed to

13 do.   Mr. Melker, however, failed to take any test and, as a result, I called him again on February 16,

14 telling him that he needed to test and return to work.

15      7.      Later that day, I received a call from the SEIU president Roxanne Sanchez.  Mr. Melker

16 was also on the line.  We had a discussion regarding the length of administrative leave available under

17 the Substance Abuse Program.  SEIU demanded that Mr. Melker's leave continue for a full 90 days.  I

18 told them that no leave was available unless it was verified that the employee was participating in a

19 treatment program.  I also told them that 90 days was the <u>maximum</u> leave of absence available under

20 the Substance Abuse Program.  We agreed that Mr. Melker could continue on paid administrative

21 leave only if he enrolled in and continued participation in a treatment program.  I suggested he return

22 to the New Bridge in-patient program.  He stated that he could not return to an in-patient program

23 because he had another job.  It was eventually agreed that he could enroll in Kaiser Richmond or

24 Kaiser Oakland.  Mr. Melker agreed to enroll in the Kaiser Richmond program.

25      8.      Thereafter, I was unable to obtain confirmation that Mr. Melker was enrolled in and

26 participating in the Kaiser Richmond program.   Shortly after March 1, I was informed that he had

27 enrolled in the program but had then decided to transfer to Kaiser Oakland.  I had not previously been

28 informed of this transfer.

- 3 -

C07-03762 MMC, DECL. OF MARGARET SAGET

9.      On March 27, I spoke with the Kaiser Oakland counselor and was informed that Mr. Melker had enrolled in the program, come to treatment on March 18, called in sick for two days thereafter and had not been heard from since that date.  He had not participated in the program since March 18.  I was unable to confirm whether Mr. Melker was, at that time, enrolled in any treatment program.

10.      I called Mr. Melker in late March and informed him that his 90-days paid administrative leave expired on April 7 and that he had to return to work no later than April 11.  He was also told he must complete a return to work test.  I informed him he should take that return to work test no later than April 7 to be certain that the results were received before April 11.  He called me on April 4 and April 5 requesting more time and discussing the possibility of a leave of absence.  I informed him that I could not extend his administrative leave beyond the maximum 90 days permitted under the Substance Abuse Policy and that I could not approve a leave of absence.  I told him any leave of absence needed to be arranged through his supervisor.  I gave him one additional day, until April 8, to take the return to work test.

11.      Mr. Melker did not take the return to work test on April 8 and did not contact me, either before or after, to discuss why he did not take that test.

12      As a result of Mr. Melker's failure to take the return to work test, to return to work or to otherwise comply with the terms of the Rehabilitation Agreement, I recommended that he be terminated.  Mr. Melker had received the maximum, 90 working days, of paid administrative leave permitted under the Substance Abuse Program, failed to continue in an approved treatment program, failed to keep me informed of his status, and failed to take the return to work test.  Based on all these factors, I determined that he had failed to comply with the terms of the Rehabilitation Agreement and that termination was the appropriate remedy.

13.      My recommendation was based solely on Mr. Melker's failure to adhere to the terms of the program and the Rehabilitation Agreement.  I had no authority to grant him additional leave and, given his failure to participate in a treatment program, felt that termination was the most appropriate action.

C07-03762 MMC, DECL. OF MARGARET SAGET

14.     Following the arbitration Mr. Melker was reinstated.  One of the conditions of his reinstatement was that he was subject to random drug testing.  I met with Mr. Melker and his union representative, in order to obtain consent for that random testing and for no other reason.

15.     Following his termination from BART, Mr. Melker had enrolled in the New Bridge Rehabilitation program and at the time he was reinstated was living n a "Sober Living" environment through that treatment center.  I received random drug testing results from New Bridge.

16.     Mr. Melker has not, since his reinstatement requested voluntary self-referral through BART's Substance Abuse Program.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct, is within my personal knowledge and if called upon to testify I could testify competently thereto.

Executed this ___ day of May, 2008 at Oakland, California

_____
Margaret Saget

# SAGET EXHIBIT A

# SECTION II

## SUBSTANCE ABUSE PROGRAM TESTING PROCEDURES

Adopted:  5/90
Revised:  2/95
Revised: 10/99

SAGET EXHIBIT A

BART  000183

SUBSTANCE ABUSE PROGRAM

## SECTION II - PROCEDURES

### TABLE OF CONTENTS

## SECTION II - PROCEDURES

A.  **Pre-Employment Testing** ................................................ 1
    Procedures ............................................................ 1
    Reporting/Confidentiality ............................................. 2
    Commonly Asked Questions.............................................. 2

B.  **Pre-Duty Testing** ..................................................... 4
    Procedures ............................................................ 4
    Reporting/Confidentiality ............................................. 5
    Commonly Asked Questions.............................................. 6

C.  **Reasonable Cause Testing** ............................................. 6
    Procedures ............................................................ 7
    Reporting/Confidentiality ............................................. 9
    Commonly Asked Questions ............................................. 10

D.  **Post-Accident Testing** .............................................. 11
    Procedures ........................................................... 12
    Reporting/Confidentiality ............................................ 14
    Commonly Asked Questions ............................................. 14

E.  **Random Testing** ..................................................... 15
    Procedures ........................................................... 15
    Reporting/Confidentiality ............................................ 18
    Commonly Asked Questions ............................................. 19

F.  **Return to Work Testing** ............................................. 20
    Procedures ........................................................... 20
    Reporting/Confidentiality ............................................ 22
    Commonly Asked Questions ............................................. 22

G.  **Follow-up Testing** .................................................. 21
    Procedures ........................................................... 21
    Reporting/Confidentiality ............................................ 22
    Commonly Asked Questions ............................................. 22

H.  **Voluntary Self-Referral for Rehabilitation** ......................... 23
    Procedures ........................................................... 23
    Reporting/Confidentiality ............................................ 24
    Commonly Asked Questions ............................................. 25

I.  **Employee Paid Rehabilitation** ....................................... 25
    Procedures ........................................................... 25
    Reporting/Confidentiality ............................................ 27
    Commonly Asked Questions ............................................. 28

BART 000184

SUBSTANCE ABUSE PROGRAM

## SECTION II - PROCEDURES

TABLE OF CONTENTS
Page 2

**EXHIBITS:**

A. **Drug Specimen Collection Procedures** ................................................................29
   Direct Observation Collections ..............................................................................32
   Common Collection Site Problems .........................................................................33

B. **Alcohol Breath Testing** ....................................................................................36
   Alcohol Breath Testing Procedures ........................................................................37
   Invalid Breath Alcohol Test Circumstances ...........................................................38

C. **Laboratory Services** .........................................................................................39
   Initial Cut-Off Levels ...........................................................................................40
   Confirmatory Cut-Off Levels ................................................................................40

D. **The Substance Abuse Professional** ...................................................................42
   Referrals, Evaluation and Treatment .....................................................................42
   Requirements .......................................................................................................42
   Qualifications ......................................................................................................42
   Responsibilities ....................................................................................................42

E. **Medical Review Officer** ...................................................................................44
   Responsibilities ....................................................................................................44
   Receipt of Laboratory Test Results .......................................................................44
   Verification of Positive Test Result .......................................................................44
   Notifying Employee of Positive Test .....................................................................45
   Review of Medical Records, History or Other Biomedical Factors ...........................45
   Process Retest requests ........................................................................................45
   Reporting a Verified Positive Test Result ...............................................................46
   Medical Condition, Rehabilitation, Return to Duty Determination ...........................46

F. **Confidentiality, Retention of Records, Reporting Results, Access to Records** .......47
   Retention of Records ...........................................................................................47
   Minimum Period of Record Retention ...................................................................48
   Types of Records to be Maintained .......................................................................48
   Reporting Results in a MIS System .......................................................................49
   Access to Facilities and Records ...........................................................................51

G. **Education and Training Programs** ......................................................................53
   Employee Education ............................................................................................53
   New Supervisor Training ......................................................................................53
   Incumbent Supervisor Refresher Training ..............................................................54

BART 000185

## A.    PRE-EMPLOYMENT TESTING

AS PART OF THE EMPLOYMENT TESTING PROCESS AT BART, ALL PROSPECTIVE EMPLOYEES WHO HAVE SUCCESSFULLY PASSED ALL PHASES OF THE TESTING PROCESS, AND WILL BE OFFERED EMPLOYMENT, SHALL BE REQUIRED TO TAKE AND PASS A DRUG AND ALCOHOL TEST IN CONJUNCTION WITH THE PRE-EMPLOYMENT PHYSICAL EXAMINATION. ALL EMPLOYMENT OFFERS WILL BE CONTINGENT UPON PASSING THE PHYSICAL EXAMINATION AND DRUG AND ALCOHOL TESTS.

JOB ANNOUNCEMENT:    The following statement appears in the "Other Requirements" section of the job announcement:

> "Applicant must pass a pre-employment medical examination and drug test which tests for marijuana, cocaine, opiates, phencyclidine (PCP), amphetamines, and alcohol".

LOBBY/DISTRICT BULLETIN BOARDS:    A flyer displayed in the Employment Office and/or other District bulletin boards announces the District's Substance Abuse Program. The flyer states:

> "The San Francisco Bay Area Rapid Transit District shall conduct drug and alcohol testing for all applicants seeking employment at the District. The drug test will test applicants for marijuana, cocaine, opiates, phencyclidine (PCP), amphetamines, and alcohol."

## PROCEDURES

1.    All applicants for employment shall be required to complete and sign a District employment application form which clearly states the requirement for taking and passing a drug test prior to being hired.

2.    The Human Resource Representative in charge of the testing and hiring must also verbally inform all applicants about BART's pre-employment drug and alcohol testing policy.

   a)    In accordance with Federal regulations 49 CFR Part 653.41, any applicant for a safety sensitive position will be required to submit to and pass with a negative result, a urine drug test .

   b)    Under District policy, any pre-employment applicant for a non-safety sensitive position, must submit to and pass with a negative result, a urine drug test.

   c)    Further, under District policy, all pre-employment applicants, safety sensitive or non-safety sensitive, must submit to and pass with a negative result, a breath alcohol test.

3.    An offer of employment is made.

4.    The Human Resource Representative schedules an appointment with the appropriate medical facility, for the prospective employee's physical examination and drug and alcohol tests.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

1

BART 000186

5.   Prior to the physical examination and drug and alcohol tests, the prospective employee is to come to the Employment Office to pick up the medical appointment papers.

6.   Once at the medical facility, the prospective employee shall be required to complete and sign the consent and release form, and collection site personnel shall conduct the drug and alcohol tests following all BART and Department of Health and Human Services (DHHS) collection procedures

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR PRE-EMPLOYMENT TESTING

1.   Results of the drug test will go directly to the Medical Review Officer.

2.   Results of the breath alcohol test will go directly to the Employee Services Manager.

3.   The Medical Review Officer shall report the drug test result (positive or negative) to the Employee Services Manager.

4.   Based on either a positive or negative result, (positive = no hire; negative = hire) the Employee Services Manager forwards to the Employment Section Chief, an employment status form, which simply states "Hire" or "No Hire".

5.   The Employment Section Chief passes on the employment status form to the Human Resource Representative in charge of that particular position.

6.   The Human Resource Representative shall notify applicant of offer of employment, or notify applicant that he/she will not be hired.

CANDIDATES WHO TEST POSITIVE, ARE NOT ELIGIBLE FOR RE-CONSIDERATION FOR EMPLOYMENT AT THE DISTRICT FOR A PERIOD OF SIX MONTHS FROM THE DATE OF THE EXAMINATION. THE EMPLOYEE SERVICES MANAGER SHALL BE NOTIFIED OF THE NAMES SUCH CANDIDATES AND SHALL MAINTAIN THE SIX MONTH INELIGIBILITY LIST, PROVIDING SAME TO THE MEDICAL REVIEW OFFICER.

## MOST COMMONLY ASKED QUESTIONS PERTAINING TO PRE-EMPLOYMENT TESTING

1.   HOW IS LEAVE OF ABSENCE TREATED FOR THIS PURPOSE; IS THE EMPLOYEE CONSIDERED AN APPLICANT, AND IF SO DOES HE/SHE HAVE TO TAKE A DRUG TEST?

Unless the employee is classified as safety sensitive and performs safety sensitive functions, an employee returning from a leave of absence is not considered to be an applicant and they will not be required to take a drug test. If the employee performs a safety sensitive function and has been absent from work for more than thirty (30) days, the employee will be required to take a Pre-Duty urine drug test prior to the resumption of the performance of safety sensitive duties.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

2

BART 000187

2.    WHAT IF THE APPLICANT TESTS POSITIVE ON THE DRUG TEST, AND DEMANDS A RE-TEST?

Only the Medical Review Officer has the authority to order the re-test. If the applicant wishes a retest, the request must be made to the Medical Review Officer within seventy-two (72) hours of notification of the results of the test. If the Medical Review Officer has reported the results of the drug test as positive, the District shall not approve any re-tests. There is no retest option to a confirmed positive breath alcohol test.

3.    WHAT IF THE APPLICANT REFUSES TO SUBMIT TO THE DRUG OR ALCOHOL TEST?

Applicant is no longer considered for employment.

4.    WHAT IF THE APPLICANT REFUSES TO SIGN THE CONSENT AND RELEASE FORMS?

Applicant is no longer considered for employment.

5.    WHAT IF THE APPLICANT DOES NOT SHOW UP FOR HIS/HER SCHEDULED DRUG TEST?

There may be a very logical explanation why an applicant missed his/her appointment. Applicant shall have 24 hours from the appointment time to call Human Resources to provide explanation for the no show. If he/she fails to call, applicant is no longer considered for employment.

6.    DOES THE APPLICANT HAVE THE RIGHT TO OBTAIN A COPY OF THE DRUG AND ALCOHOL TEST RESULTS? IF SO, HOW ARE THEY OBTAINED?

Yes. Applicant is to submit his/her request in writing to the appropriate Human Resource Representative; the request shall be forwarded to the Employee Services Manager.

7.    WILL ANY OTHER LEGAL AGENCY (CITY, STATE OR FEDERAL LEVEL) BE INFORMED OF A POSITIVE TEST?

No, all tests are strictly confidential.

8.    WHAT IF THE DRUG TEST RESULT REFLECTS A LABORATORY OR MRO CANCELLATION OR NO TEST FOR BEING TOO DILUTE, IS THE CANDIDATE OFFERED AN OPPORTUNITY FOR A RETEST?

Yes, a second opportunity for drug testing will be provided the candidate, however, if the retest again is canceled, or a no test, no further opportunities to test will be provided and the candidate will be declared a no hire.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

3

BART 000188

9. WHAT HAPPENS IF THE LABORATORY AND MRO CONFIRM AN ADULTERATED SPECIMEN. WILL THE CANDIDATE BE OFFERED AN OBSERVED RETEST?

No, an adulterated specimen constitutes a test refusal which is considered the same as a positive result and the same consequences would apply as if the specimen tested positive.

B. **PRE-DUTY TESTING FOR SAFETY SENSITIVE EMPLOYEES**

AS PART OF THE SAFETY ASSURANCE PROCESS AT BART, ALL NEW HIRES, NEWLY PROMOTED OR NEWLY TRANSFERRED EMPLOYEES ASSIGNED TO PERFORM SAFETY SENSITIVE DUTIES, SHALL BE REQUIRED TO UNDERGO AND PASS A BREATH ALCOHOL AND URINE DRUG TEST PRIOR TO THE PERFORMANCE OF ANY SAFETY SENSITIVE FUNCTION FOR THE FIRST TIME.

1. In accordance with Federal regulations 49 CFR Part 653.41 all newly promoted or transferred employees assigned to safety sensitive positions, will be required to submit to a urine drug test prior to the first time performance of any safety sensitive function. The employee must test negative on the urine drug test in order to perform safety sensitive duties.

2. This requirement does not apply to non-safety sensitive applicants or employees.

PROCEDURES

All supervisors have the responsibility to ensure that employees about to perform a safety sensitive function for the first time are free of alcohol and drugs.

1. In accordance with Federal regulations, it is each supervisor's responsibility to arrange for a pre-duty urine drug test prior to an employee's performance of a safety sensitive function for the first time. Arrangements for a pre-duty drug test should be made through a Human Resources representative.

2. A newly hired employee assigned to perform a safety sensitive function who, for any reason, has been unable to commence safety sensitive duties for a period of more than thirty (30) days from the date of the pre-hire drug test, will be required to submit to a urine drug test prior to the performance of a safety sensitive function for the first time. The supervisor must contact a Human Resource representative to arrange for the drug test prior to the performance of safety sensitive duties.

3. Employees selected for transfer or promotion to the performance of safety sensitive duties for the first time will be required to submit to a urine drug test prior to the performance of any safety sensitive function. The supervisor must contact a Human Resource representative to arrange for the drug test prior to the performance of safety sensitive duties.

   a. A Human Resources representative will advise employees transferring or being promoted to a safety sensitive position from a non-safety sensitive position that rehabilitation will be available following a positive test result for drugs or alcohol,

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000189

providing the employee has admitted to use and requested rehabilitation <u>prior</u> to the test and providing the employee is otherwise eligible.

b.     Failure to admit use and request rehabilitation prior to a positive pre-duty drug test will result in the temporary loss of the safety sensitive position and a referral to the Employee Services Manager for assessment and referral for employee paid rehabilitation.

c.     The employee shall remain in his/her prior non-safety sensitive position during rehabilitation.

d.     Upon satisfactory completion of the required rehabilitation, testing negative on a return to work drug test, release by the ESM to perform safety sensitive duties and providing the employee remains in compliance with his/her return to work terms and conditions as noted in the return to work agreement, the employee shall have the right to be transferred or promoted to the next available vacant safety sensitive position or training program, for which the person was previously selected, if he/she so chooses.

4.     Newly hired, transferred or promoted employees will not be released to assume the performance of safety sensitive duties for the first time until negative test results for drugs have been received by the Employee Services Manager.

5.     Newly hired, transferred or promoted employees who test between 0.02% and 0.039% alcohol concentration on a breath alcohol test, will be re-tested within 30 minutes. If, on the confirmation test, the employee again tests between 0.02% and 0.039% alcohol concentration, the employee will be held off work without pay for eight (8) hours.

6.     An employee who tests above 0.04% alcohol concentration on the pre-duty alcohol breath test will be re-tested within 20 minutes. If, on the confirmation test, the employee again tests above 0.04% alcohol concentration, the employee will be in a non-pay status and referred to the Employee Services Manager for assessment and treatment recommendations. The employee may not report for work until released by the Employee Services Manager and may be subject to disciplinary action up to and including termination, for violation of the District's Substance Abuse Program policy.

<u>REPORTING AND CONFIDENTIALITY PROCEDURES FOR PRE-DUTY TESTING</u>

1.     Results of the urine drug test will be reported to the District's Medical Review Officer (MRO) for review and interpretation. The results will then be reported to the Employee Services Manager.

2.     The Employee Services Manager will provide the supervisor of an employee who has a negative test result for drugs with a "Release for the performance of a safety sensitive function". A positive test result, for drugs, will result in the employee's supervisor receiving a "Denied release for the performance of a safety sensitive function" notice.

Adopted: 5/90
Revised: 2/95
Revised: 10/99                                       5

BART 000190

The supervisor must have a properly documented release form prior to allowing an employee to perform safety sensitive duties for the first time.

EMPLOYEES WHO TEST POSITIVE FOR DRUGS ON A PRE-DUTY, PRE-SAFETY SENSITIVE PERFORMANCE, DRUG TEST, WILL BE SUBJECT TO DISCIPLINE, UP TO AND INCLUDING TERMINATION FROM EMPLOYMENT, FOR VIOLATION OF DISTRICT SUBSTANCE ABUSE POLICY.

## MOST COMMONLY ASKED QUESTIONS PERTAINING TO PRE-DUTY DRUG TESTING

1. WHAT IF AN EMPLOYEE NEWLY HIRED, PROMOTED OR NEWLY TRANSFERRED TO A SAFETY SENSITIVE POSITION TESTS POSITIVE ON A PRE-DUTY DRUG TEST AND DEMANDS A RE-TEST?

   If an employee is notified by the Medical Review Officer of a positive drug test, he/she may request a re-test of the original sample at his/her own expense. The request for a re-test must be made to the MRO within 72 hours of notification of the positive test result.

   Newly promoted or recently transferred employees who test positive for drugs will be referred to the Employee Services Manager for evaluation and may be referred to treatment, if indicated. Employees who test positive for drugs will be subject to discipline up to and including termination from employment for violation of the District's substance abuse program policies.

2. WHAT IF THE EMPLOYEE REFUSES TO SUBMIT TO TESTING, TO SIGN THE CONSENT TO TEST FORM OR THE RELEASE FORM OR FAILS TO FULLY COOPERATE WITH THE TESTING PROCEDURE?

   If the employee refuses to consent or submit to a drug test, refuses to sign the necessary forms permitting the tests to be conducted, or fails to cooperate fully with the testing procedures, it will be treated as if the test result was positive, and the employee will be subject to discipline up to and including termination from employment.

C. **REASONABLE CAUSE TESTING**

IF AN EMPLOYEE IS SUSPECTED OF BEING IMPAIRED OR AFFECTED BY DRUG OR ALCOHOL USE, HE/SHE WILL BE REQUIRED TO SUBMIT TO A DRUG AND ALCOHOL TEST.

Reasonable cause for testing means suspicion based on specific personal observation of two (2) supervisors, unless only one supervisor is practically available. The observing supervisor(s) must have been trained in the detection of drug and alcohol use through the District's Supervisor's Drug/Alcohol Awareness Training Program, and shall describe and document:

Specific, personal and articulable observations concerning the appearance, behavior, speech, body odors, or performance of the employee; or

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000191

Violation of a safety rule, or other unsafe work incident, which, after further investigation of the employee's behavior, leads the supervisor(s) to believe that drug or alcohol use may be a contributing factor; or

Other physical, circumstantial or contemporaneous indicators of drug or alcohol use.

Suspicion is not reasonable, and thus not a basis for testing, if it is based <u>solely</u> on the observations and reports of third parties or violation of a safety rule or other unsafe work incident. However, such suspicion may be a basis for further investigation, or for action to protect the safety of patrons, such as ordering the employee to stop work.

## PROCEDURES

Each supervisor has a responsibility to observe that employees are at all times free from the effects of or impairment by alcohol or illegal drugs. EACH SUPERVISOR ALSO HAS THE AUTHORITY TO EXECUTE HIS/HER DECISION WHETHER TO TEST OR NOT TO TEST FOR REASONABLE CAUSE, in accordance with the procedures outlined below:

1.      Supervisor observes different/abnormal behavior in employee.

2.      Have employee stop work.

3.      Escort the employee to an area where the first on-scene supervisor is able to talk with the employee in private, to determine basis for supervisor's suspicion, and where the employee can be further observed.

4.      First on-scene supervisor completes the Observation/Incident Report.

5.      First on-scene supervisor shall obtain a second supervisor, <u>from any department except BART police,</u> unless the testing situation involves a police officer, for purposes of observing and evaluating the employee's behavior. If the second supervisor has not arrived within 15 minutes, or if no supervisor is practically available, the first on-scene supervisor will continue with procedures as outlined below.

6.      Second supervisor shall complete his/her own Observation/Incident Report.

7.      First on-scene supervisor and second supervisor compare their Observation/ Incident reports.

8.      If first on-scene supervisor and second supervisor do not agree on the decision whether to test or not to test, the first on-scene supervisor makes the decision to test or not to test the employee for drugs and/or alcohol.

9.      If the decision is made not to test, have the employee return to work, if supervisor determines that employee is fit to return to work. Document action on the Observation/Incident Report and forward it to the Employee Services Manager and the Department Head.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000192

10.  If the decision is made to test, supervisor informs the employee of this decision, and why it was made. The breath alcohol test must be conducted within two hours (2) following the decision to test. If the test cannot be conducted within the required two (2) hours, a detailed explanation must be submitted to the Employee Services Manager. The decision to test or not to test should be made within two (2) hours of the first supervisor's suspicion that reasonable cause testing may be indicated.

11.  If the employee is represented, the supervisor advises him/her of his/her right to have a union representative present prior to testing. Allow up to one hour for a union representative to appear. If no union representative is available within one hour, continue the procedure. Be sure to document that the union representative was called by the supervisor, the time called and the no show of the union representative.

12.  Supervisor shall call Central to notify the appropriate collection facility and the Employee Services Manager that an employee is being transported for testing. DO NOT IDENTIFY THE EMPLOYEE BY NAME.

13.  Order the employee to submit to a drug and alcohol test and to sign a Consent and Release form. Advise him/her that failure to submit to a drug or alcohol test and not signing the Consent form or to fully cooperate with the testing procedure is considered to be gross insubordination for failure to follow a direct order, and will be cause for discipline up to and including discharge from District employment.

14.  Supervisor shall inform the employee of the availability of rehabilitation at the employee's own expense if the employee admits to drug or alcohol use prior to the test, and if the employee is eligible. Supervisor shall also inform the employee that a positive test will result in disciplinary action up to and including termination if the employee has not elected the rehabilitation option prior to the test.

(Note: If the employee is under investigation for an extreme case violation of District policy, he/she is ineligible for the rehabilitation options under this program during the period of investigation up to the notice of charges. If the department moves for discharge from employment the employee remains ineligible for the rehabilitation option unless or until the disciplinary process is concluded and the employee is exonerated of the charge or the discipline is reduced to a lessor charge. The charging department must make the decision regarding discharge or lessor discipline within twelve (12) days following the reasonable cause test. If the department has not moved for discharge within twelve (12) days, the employee may elect the rehabilitation option, providing he/she is otherwise eligible. Discipline, if any, shall go forward notwithstanding the employee's eligibility for the rehabilitation option.)

15.  Advise the employee that he/she will be in a paid status until the drug test sample is collected and the breath alcohol test conducted. The employee will then be placed in an unpaid status and relieved from work until the District receives the drug test results. If the drug test is negative, the District will make the employee whole.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

8

BART 000193

16.    Both supervisors are to transport and/or accompany the employee to the collection site. The union representative may join them should he/she desire to do so.

17.    Collection site personnel are to have the employee sign a consent and release form and conduct drug test collection and breath alcohol analyzation following all BART and DHHS collection procedures.

18.    First on-scene supervisor transports and/or accompanies the employee home. The union representative may join them should he/she desire to do so.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR REASONABLE CAUSE TESTING

After arranging for the transportation home for the employee, the supervisor forwards a copy of the Observation/Incident Report (his/her own, and the second supervisor's) to the Employee Services Manager and Department Head.

1.    Employee Services Manager will notify Department Head to stop payment of salary for employee until further notice. Department Head is not to discuss the reasons for the action.

2.    Verified drug test results are sent directly to the Employee Services Manager from the Medical Review Officer. Alcohol breath test results are submitted directly to the Employee Services Manager from the collection facility or the Breath Alcohol Technician (BAT).

3.    Following receipt of the drug test result, the Employee Services Manager is to inform the Department Head of the employee's return to work status, i.e., "released to return to work" or "not released to return to work". This should be communicated by phone or in person; the Employee Services Manager should document notification.

4.    If the alcohol test is positive (0.04% or greater) or if the employee has admitted to drug use prior to the test, the Employee Services Manager shall contact the employee to set up a meeting to discuss options and conduct an evaluation of the employee prior to the drug test result. If the results of either the alcohol or drug test are positive, the Employee Services Manager will refer the employee for rehabilitation, if indicated, and the employee is eligible for rehabilitation.

5.    If the result is negative, the Employee Services Manager, or designee, shall inform the employee of the release to return to work with instructions to contact his/her supervisor for return to work instructions. The Employee Services Manager shall notify the Department Head of the employee's release of return to work and that the employee is to be made whole. This should be communicated by phone or by person; the Employee Services Manager must document notification. Details surrounding the test will not be discussed at any time.

6.    If the result is positive, and rehabilitation is not available, and disciplinary action is warranted, it will be administered by the Department Head.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

9

BART  000194

<u>COMMONLY ASKED QUESTIONS PERTAINING TO REASONABLE CAUSE TESTING</u>

1.     WHAT IF EMPLOYEE REFUSES TO SUBMIT TO TESTING?

Employees will be immediately suspended without pay for gross insubordination.  Refusing to submit to testing or failing to fully cooperate with the testing procedures is treated the same as if the employee had tested positive.  Such gross insubordination will result in disciplinary action up to and including termination.  Supervisor is to send the original of the Observation/Incident report to the Employee Services Manager with a copy to the Department Head.

2.     WHAT IF THE EMPLOYEE REFUSES TO SIGN THE RELEASE OF INFORMATION?

In accordance with Federal guidelines, releases of information for the alcohol test must be signed at the time of the test.  If the employee refuses to sign the release of information for the alcohol breath test, it will be the treated as if the employee tested positive and will result in disciplinary action up to and including termination from employment.

3.     DOES THE SUPERVISOR HAVE THE RIGHT TO TERMINATE THE EMPLOYEE ON THE SPOT?

No.

4.     WHAT IF THE SUPERVISOR, AFTER QUESTIONING AND TALKING WITH THE EMPLOYEE, DECIDES NOT TO TEST?

Send employee back to work if supervisor determines that employee is fit to return to work.  Document action taken, and why, on the Observation/Incident report and send the original to the Employee Services Manager.  Send copy of report to Department Head.

5.     WHAT DOES THE SUPERVISOR DO IF THE EMPLOYEE ADMITS TO HAVING A DRUG OR ALCOHOL PROBLEM, (PRIOR TO TESTING), AND WOULD LIKE TO GO INTO THE REHABILITATION PROGRAM?

Follow procedures for testing.  Indicate his/her request on the Observation/Incident report and direct the employee to the Employee Services Manager.  Employee Services Manager shall handle the situation from there.

6.     WHAT IF THE EMPLOYEE BECOMES ABUSIVE OR VIOLENT?

Attempt to stabilize the situation.  If you are not successful, call BART police.

7.     HOW LONG SHOULD THE FIRST ON-SCENE SUPERVISOR WAIT FOR THE SECOND SUPERVISOR TO ARRIVE?

15 minutes.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000195

8. **WHAT IF THE FIRST ON-SCENE SUPERVISOR AND THE SECOND SUPERVISOR CANNOT AGREE TO TEST?**

The first on-scene supervisor has the authority to make the decision to test or not to test, regardless of the rank of the second supervisor.

D. **POST-ACCIDENT TESTING**

THE DISTRICT IS COMMITTED TO PROVIDING A SAFE AND SECURE WORK ENVIRONMENT. EMPLOYEES INVOLVED IN AN ON-THE-JOB ACCIDENT MAY BE SUBJECT TO TESTING.

TO CONDUCT POST-ACCIDENT TESTING, AN ACCIDENT MUST FIRST MEET THE DEFINITION OF AN ACCIDENT. AN ACCIDENT IS DEFINED AS AN INCIDENT OR OCCURRENCE IN WHICH:

* A PERSON DIES. (TESTING IS MANDATORY);

* A PERSON SUFFERS A BODILY INJURY AND IMMEDIATELY RECEIVES MEDICAL TREATMENT AWAY FROM THE SCENE OF THE ACCIDENT;

* PROPERTY DAMAGE IS ESTIMATED AT GREATER THAN $5,000.00; OR

* A MASS TRANSIT VEHICLE MUST BE REMOVED FROM REVENUE SERVICE.

THE TERM "REMOVAL OF A MASS TRANSIT VEHICLE FROM REVENUE SERVICE", AS USED TO DEFINE AN "ACCIDENT" FOR POST-ACCIDENT TESTING, DOES NOT INCLUDE SITUATIONS IN WHICH (A) A VEHICLE IS REMOVED FROM REVENUE SERVICE FOR THE PURPOSE OF INVESTIGATING AND EVALUATING WHETHER IT HAS SUSTAINED DAMAGE WHICH REQUIRES IT TO BE REMOVED FROM REVENUE SERVICE, OR (B) A VEHICLE IS REMOVED FROM SERVICE FOR ROUTINE SCHEDULED MAINTENANCE.

IN ADDITION, UNDER THE POST-ACCIDENT TESTING PROVISIONS OF THIS POLICY, WHERE THERE IS NO FATALITY, TESTING OCCURS ONLY WHEN THE ACCIDENT FALLS WITHIN THE DEFINITION OF AN ACCIDENT UNDER THE POLICY AND WHEN THE EMPLOYEE CONTRIBUTED TO OR CANNOT BE COMPLETELY DISCOUNTED AS A CONTRIBUTING FACTOR TO THE ACCIDENT.

IT IS IMPORTANT TO UNDERSTAND THAT THE CIRCUMSTANCES LISTED ABOVE MUST BE USED AS "PROMPTS" TO ASSIST THE SUPERVISOR IN ANALYZING THE SITUATION. AN ON-THE-JOB ACCIDENT DOES NOT MEAN AUTOMATIC TESTING, **UNLESS THERE IS A FATALITY RESULTING FROM THE ACCIDENT.** THE FIRST ON-SCENE OPERATIONS/APPROPRIATE * SUPERVISOR MUST GATHER WHATEVER INFORMATION IS READILY AVAILABLE, ANALYZE THE SITUATION, AND MUST DETERMINE IF THE EMPLOYEE CONTRIBUTED TO THE ACCIDENT. IF THE SUPERVISOR DETERMINES THAT THE EMPLOYEE DID, IN FACT, LIKELY CONTRIBUTE TO THE ACCIDENT, OR THE

Adopted: 5/90
Revised: 2/95
Revised: 10/99

11

BART 000196

EMPLOYEE CANNOT BE COMPLETELY DISCOUNTED AS A CONTRIBUTING FACTOR TO THE ACCIDENT, THE EMPLOYEE SHALL BE REQUIRED TO SUBMIT TO A DRUG TEST.

*The term "Operations Supervisor" as used in this section, applies to the determination for testing of and the testing procedures for ATU bargaining unit employees. Foreworkers are not "Operations Supervisors". The term "Appropriate Supervisor" as used in this section applies to the determination for testing of and the testing procedures or non-ATU bargaining unit employees. The term "Appropriate Supervisor" shall be defined by mutual agreement between the District and each collective bargaining unit representative.

## PROCEDURES

1.  An employee involved in an on-the-job accident must immediately report the accident to his/her supervisor or foreworker. (Failure to immediately report the accident is grounds for discipline up to and including discharge).

2.  On-scene communications coordinator, as defined in Definitions, is to stabilize the situation including, but not limited to, securing emergency response and coordinating with BART police personnel as necessary.

    a.  If the employee requires emergency medical treatment, and is incapacitated or physically unable to provide consent, the supervisor or foreworker shall immediately notify the Employee Services Manager. Emergency medical treatment for an injured employee is not to be delayed for drug or alcohol testing. The ESM will dispatch the collector to the medical treatment facility to conduct drug and alcohol testing once the employee has received the necessary medical treatment.

    b.  If the employee, a patron or a bystander is fatally injured, drug and alcohol testing is mandatory. The operator of the vehicle at the time of the accident is subject to testing and must make himself/herself available for testing. Follow PROCEDURE Steps 6 through 13 below for testing procedures.

    c.  The first on-scene operations/appropriate supervisor from the same department as the employee will independently make the drug and alcohol testing decision without consultation with the other supervisors or higher ranking staff. The decision shall be made within 2 hours from the time of the accident. (NOTE: Pursuant to ATU/MOU #2-94 and ATU/SL #8-9, the Transportation Department is separate from the System Service Department).

    d.  A post-accident blood or urine drug test and/or breath alcohol test conducted by a federal, state or local official with authority to conduct the test will satisfy the federal and District policies concerning post-accident testing as long as the testing procedures used conform to testing requirements and as long as the District is able to obtain the results of the test.

Adopted:  5/90
Revised:  2/95
Revised:  10/99

12

3.   If the employee does not need medical treatment, escort the employee to an area where the first on-scene operations/appropriate supervisor is able to talk with the employee in private, to determine if employee contributed in any way to the accident.

4.   First on-scene operations/appropriate supervisor makes the decision to test or not to test the employee for drugs and alcohol. The decision to test or not to test will be supported by management and will not be rescinded or overruled by higher-ranking staff.

5.   If the decision is made not to test, have the employee return to work if the supervisor determines that the employee is fit to return to work. Document action on the Observation/Incident report, and forward the original to the Employee Services Manager and a copy to the Department Head.

6.   If there is a death as a result of the accident or the decision is made to test, the first on-scene operations/appropriate supervisor is to inform the employee(s) of the decision and why it was made. Any employee whose performance may have contributed to the accident will be subject to testing following a fatality.

7.   If the employee is represented, the first on-scene operations/appropriate supervisor is to advise him/her of their right to have a union representative present prior to testing. Allow up to one hour for a union representative to appear. If no union representative is available within one hour, continue the procedure. Be sure to document that union representative has been called by the supervisor, time called and the no show of the union representative.

8.   Order the employee to submit to a drug test, and to sign a consent and release form. Advise him/her that failure to submit to a drug and/or alcohol test and not signing the Consent form is considered to be gross insubordination for failure to follow a direct order, and will be cause for discipline up to and including discharge from District employment. A refusal to submit to testing or failure to fully cooperate with the collection procedure is considered the same as a positive test result resulting in disciplinary action up to and including termination.

9.   Leaving the scene of the accident prior to testing will be deemed the same as refusing to submit to testing and will be treated as if the employee had tested positive, resulting in discipline up to and including discharge from District employment.

10.  Advise the employee that he/she will be in a paid status until the test sample is conducted/collected. The employee will then be placed in an unpaid status and relieved from work until the District receives both the alcohol and drug test results. If both tests are negative, the District will make the employee whole.

11.  First on-scene operations/appropriate supervisor shall call Central to notify the Employee Services Manager that an employee is being transported for testing. The Employee Services Manager will dispatch the collection agent to the collection site. **DO NOT IDENTIFY THE EMPLOYEE BY NAME.**

12.  A post-accident breath alcohol test is to be conducted within 2 hours of the time of the incident. If the breath alcohol test cannot be conducted within 2 hours of the time of the

BART 000198

incident, a written explanation for the delay must accompany the Observation/Incident report form and be filed with the test result and other test related documentation.

13. First on-scene operations/appropriate supervisor is to transport and/or accompany the employee to the collection site. The union representative may join them should he/she desire to do so.

14. Collection site personnel are to have the employee sign a Consent and Release form and conduct drug test collection and alcohol breath testing following all BART and NIDA collection procedures.

15. First on-scene operations/appropriate supervisor transports and/or accompanies the employee home. The union representative may join them should he/she desire to do so.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR POST-ACCIDENT TESTING

1. After transporting the employee home, first on-scene operations/appropriate supervisor is to forward the original of the Observation/Incident report form to the Employee Services Manager with a copy to the Department Head.

2. Employee Services Manager will notify Department Head to stop payment of salary for employee until further notice. Department Head is not to discuss the reasons for the action.

3. Drug and/or alcohol test results will be sent directly to the Employee Services Manager from the Medical Review Officer (MRO). Alcohol test results will be sent directly to the Employee Services Manager from the collection site or the Breath Alcohol Technician (BAT).

4. Employee Services Manager informs the Department Head of the employee's work status, i.e. released to return to work or not released to return to work, on suspension, referred for disciplinary action. This should be communicated by phone or in person, and the Employee Services Manager must document notification.

5. If the results are negative for both the drug and alcohol tests, employee shall return to work, and the District will make the employee whole. Employee Services Manager shall notify the Department head of payment situation only, and shall not at any time discuss the details surrounding it.

6. If the result is positive and disciplinary action is warranted, it will be administered by the Department Head.

## COMMONLY ASKED QUESTIONS PERTAINING TO POST-ACCIDENT TESTING

1. WHAT IF EMPLOYEE REFUSES TO SUBMIT TO TESTING?

   Employee will be immediately suspended without pay. A refusal to submit to testing is considered to be the same as a positive test result and will result in disciplinary action for

Adopted: 5/90
Revised: 2/95
Revised: 10/99

14

BART 000199

gross insubordination. Such gross insubordination will result in disciplinary action up to and including termination.

2.     WHAT IF AN EMPLOYEE LEAVES THE SCENE OF THE ACCIDENT PRIOR TO TESTING?

Leaving the scene of the accident prior to testing will be considered the same as refusing to submit to testing and will be treated as if the employee had tested positive. Leaving the scene of the accident prior to testing will also result in a referral to the Employee Services Manager for an evaluation and will subject the employee to discipline up to and including termination from District employment.

3.     DOES THE FIRST ON-SCENE OPERATIONS/APPROPRIATE SUPERVISOR HAVE THE RIGHT TO TERMINATE THE EMPLOYEE ON THE SPOT?

No.

4.     WHAT IF THE SUPERVISOR, AFTER QUESTIONING AND TALKING WITH THE EMPLOYEE, DECIDES NOT TO TEST?

Send the employee back to work if supervisor determines that the employee is fit to work. Document the action taken, and why on the Observation/Incident report. Send the original report to the Employee Services Manager with a copy to the Department Head.

5.     IS IT MANDATORY THAT A SECOND SUPERVISOR BE CALLED IN THE POST-ACCIDENT TESTING PROCEDURES?

No

E.     **RANDOM TESTING**

Random drug and alcohol testing will be conducted on safety sensitive employees only. Employee identification number and social security number will enter all safety sensitive employees in a selection pool. Random selection is accomplished by a scientifically valid, tamper proof, computer generated selection process. Selected employees will be tested in an unannounced, unpredictable manner. Once selected, employees will remain in the active pool and continue to be subject to selection throughout the random period. Every employee in the selection pool will have an equal chance of being selected for testing.

PROCEDURES

1.     Random testing will be conducted on all work shifts, all times of the day, all days of the week throughout the calendar year.

2.     In accordance with Federal mandate, fifty percent (50%) of the eligible safety sensitive employees in the random pool will be selected for unannounced drug testing and ten percent

(10%) for alcohol testing each calendar year.

3.  Random drug and alcohol testing will be conducted just before the employee is scheduled to perform safety sensitive functions, while the employee is performing safety sensitive duties or at the end of the employee's work period of performing safety sensitive duties. The test must be conducted within an hour of the employee's completion of safety sensitive work duties.

4.  The computer selection process will be conducted as needed to comply with required random selection. If the employee selected is not scheduled to perform safety sensitive duties during the immediate selection period, he/she may be scheduled, within the selection period, at a later time when scheduled to perform safety sensitive duties.

    Example:    John Doe works in stores and must have a commercial driver's license to drive the stores merchandise trucks. His name was selected for testing on Monday, however, he won't be scheduled to drive until Thursday. John will be scheduled for <u>drug</u> testing on Monday. Alcohol testing will not be conducted because John is not scheduled to perform a safety sensitive function that day.

5.  Supervisors of selected employees will be notified approximately one (1) hour in advance of the scheduled employee collection time. Supervisors will be advised not to notify the employee until told to do so.

    Example:    John Doe works graveyard at Hayward Shop. He has been selected for random testing during his shift. One hour (1) prior to the scheduled collection time, John's supervisor will be contacted by the Drug Testing Coordinator and notified of the time and location for John's collection procedure. The supervisor will be expected to accompany (or transport) the employee to the collection location when advised by the Drug Testing Coordinator to do so and wait with the employee until released by the collector.

6.  The Employee Services Manager or designee will schedule the collection agent for the urine drug sample collection and breath alcohol test and will provide the collector with the supervisor's name, the employee's name and identification number, collection site location and time of collection.

7.  At the designated time of collection, the supervisor informs the employee he/she has been selected for random testing and is to stop work.

8.  The supervisor orders the employee to submit to a drug and alcohol test, and to sign all necessary Consent to Test and Release of Information forms. Advise the employee that failure to submit to a drug or alcohol test, failure to cooperate fully with the collection procedure or refusing to sign the necessary testing forms constitutes a refusal to test resulting in disciplinary action for gross insubordination. Such insubordination will be cause for discipline up to and including discharge from District employment. A refusal to test is

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000201

treated the same as a positive and will result in the employee being removed from duty and referred to the Employee Services Manager or designee for evaluation and treatment recommendations.

9.    The Supervisor shall inform the employee of the availability of rehabilitation at the employee's own expense if the test result is positive for drugs and/or alcohol, and the employee is eligible.

   a.    The supervisor shall also inform the employee that if he/she tests positive for drugs or alcohol (0.04% or greater) for the first time on a random test, he/she will be referred to the Employee Services Manager for evaluation and referral for self-paid rehabilitation, if indicated and the employee is eligible. Rehabilitation will be paid by the employee. The employee will be in a no-pay status during any absence for evaluation or rehabilitation, but is entitled to use accrued vacation time or sick leave as well as District insurance benefits, while participating in the rehabilitation and aftercare programs.

   b.    The supervisor shall further inform the employee that a second positive random drug or alcohol test requires an admission of use prior to the test. He/she will be informed that a positive test (for drugs or alcohol 0.04% or greater) will result in disciplinary action up to and including termination from employment if the employee has not admitted use and elected rehabilitation prior to the test.

(Note: If the employee is under investigation for an extreme case violation of District policy, he/she is ineligible for the rehabilitation options under this program during the period of investigation up to the notice of charges. If the department moves for discharge from employment the employee remains ineligible for the rehabilitation option unless or until the disciplinary process is concluded and the employee is exonerated of the charge or the discipline is reduced to a lessor charge. The charging department must make the decision regarding discharge or lessor discipline within 14 days following the reasonable cause test. If the department has not moved for discharge within 14 days, the employee may elect the rehabilitation option, providing he/she is otherwise eligible. Discipline, if any, shall go forward notwithstanding the employee's eligibility for the rehabilitation option.)

10.    Advise the employee that he/she will be in a paid status until the breath test is conducted and the drug sample is collected.

11.    The breath alcohol test will be performed first followed by the proper collection procedure of a body fluid sample for submission to the laboratory for drug testing. If the breath alcohol test results in the presence of alcohol between 0.02% and 0.039% the employee will be re-tested within 30 minutes. If the employee tests again between 0.02% and 0.039% on the re-test, the employee will be relieved from duty and placed on a non-paid status for 8 hours.

12.    During the waiting period between the initial breath alcohol test and the re-test, the employee must be secured in a private area away from the work scene affording as much privacy as possible. During the waiting period the employee is to be observed by the supervisor and the Collection Agent. The employee is not allowed to resume work during the waiting period.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000202

13.     The employee will be warned to refrain from using any tobacco products, mouthwash, breath sprays, cough drops, lozenges, or other food or medicinal products containing alcohol during the waiting period.

14.     If the employee tests negative on the initial or the repeat alcohol breath test, the employee will be given a "released to perform safety sensitive duties" form signed by the collector or the ESM.

15.     An employee with a breath alcohol test result above 0.04% will be re-tested within 20 minutes. If the re-test confirms a positive result above 0.04% alcohol concentration, the employee will be suspended without pay and directed to the Employee Services Manager for an evaluation and referral for rehabilitation, if indicated.

16.     Following the alcohol breath test, regardless of the outcome, the employee will be expected to provide a urine sample for drug testing. The collection procedure will not be an observed collection unless the employee behaves in a manner suggestive of potential adulteration of the test sample.

17.     Following a positive breath alcohol test (0.04% or greater), the employee will be transported and/or accompanied home. The employee may not return to work until released by the Employee Services Manager and may be subject to disciplinary action for violation of the District's Substance Abuse Program.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR RANDOM SELECTION TESTING

1.     The computer generated selection of safety sensitive employees to be drug and alcohol tested under the random selection testing program will be coordinated by the Employee Services Manager.

2.     The computer responsible for generating employee selection for random testing, as well as the random selection employee identification pool records, shall be maintained in a secured area, with access limited to the Employee Services Manager and/or designee.

3.     Alcohol breath testing will only be conducted utilizing an approved, fully operational, accurate (as indicated by a pre-test), Evidential Breath Testing Device.

4.     Alcohol breath testing will only be conducted by properly credentialed Breath Alcohol Technicians who will carefully protect the confidentiality of the employee's alcohol breath test result.

5.     Following sample collection and breath alcohol testing, the Breath Alcohol Technician will fax the results of the breath alcohol test to the Employee Services Manager.

6.     If the breath alcohol result is negative, the Employee Services Manager will inform the supervisor that the employee is released to return to duty.

Adopted: 5/90
Revised: 2/95
Revised: 10/99                                                18

BART 000203

7.  If the breath alcohol test result remains between 0.02% and 0.039% after the confirmation re-test, the supervisor will be informed that the employee is not released to return to duty at this time and will be off work for a minimum of eight (8) hours and is on an unpaid status for the time off work. If the test result is above 0.04% on the confirmation re-test result, and rehabilitation is available, the supervisor and the Department Head will be notified that the employee is on unpaid leave and has been directed to the Employee Services Manager for evaluation and referral, if indicated. The employee may be subject to disciplinary action for violation of District Substance Abuse Program policies up to and including discharge from District employment. The Department Head, will administer disciplinary action, if any.

## COMMONLY ASKED QUESTIONS PERTAINING TO RANDOM SELECTION TESTING

1.  **WHAT IF THE EMPLOYEE REFUSES TO CONSENT AND SUBMIT TO TESTING?**

    Refusing to consent to or submit or fully cooperate with drug sample collection and breath alcohol testing is the same as a positive test result and will result in disciplinary action up to and including discharge from employment. Even if the employee may be terminated from employment, the employee will be referred to the Employee Services Manager for an evaluation and treatment recommendations, if indicated.

2.  **WHAT IF THE EMPLOYEE SAYS HE/SHE IS SICK AND NEEDS TO GO HOME?**

    If the employee has been notified of selection for random testing, the employee is not allowed to "drop sick" until the testing procedures are completed. Failure to be available for drug or breath alcohol testing constitutes the same as refusing to submit to testing and would be treated as though the test was positive, resulting in disciplinary action up and including termination.

3.  **IF THE EMPLOYEE IS TESTED ONCE DOES THAT MEAN THAT EMPLOYEE WON'T BE TESTED AGAIN FOR THE REST OF THE YEAR?**

    No, an employee in the safety sensitive random testing pool stays in the pool until his/her safety sensitive status changes and is subject to selection equally with all other employees in the pool.

4.  **WHAT IF THE EMPLOYEE CANNOT PROVIDE A URINE SPECIMEN WHEN HE/SHE IS NOTIFIED OF SELECTION FOR RANDOM TESTING?**

    The employee has three (3) hours within which to provide a urine specimen from the time of notification of selection for random testing. During the three (3) hour period the employee will be provided with up to forty (40) ounces of fluid to drink. If the employee does not drink the offered fluids, it will be the same as if the employee refuses to submit to testing. If, after three (3) hours and consuming forty (40) ounces of fluids, the employee is still unable to provide a urine sample, the employee will be taken to a medical facility for examination for shy bladder. If the employee is found not to have shy bladder, it will be considered the same as testing positive and the employee will be treated accordingly.

Adopted: 5/90
Revised: 2/95
Revised: 10/99                                              19

BART 000204

5.  WHO CONTROLS THE SELECTION PROCESS AND HOW SAFE IS IT FROM TAMPERING?

The selection process is computer generated, computer controlled and tamper-proof. Access to the computer program governing the selection is limited to the Employee Services Manager and her designee.

6.  WHAT IF THE EMPLOYEE TESTS POSITIVE FOR DRUGS OR ALCOHOL (0.04% OR GREATER) ON THE FIRST RANDOM TEST CONDUCTED ON THE EMPLOYEE:

The employee is entitled to self-paid rehabilitation, if indicated and if the employee is otherwise eligible, on the <u>first positive</u> random drug or breath alcohol or drug test, even if the employee hasn't admitted to drug or alcohol prior to the test. On a second positive test under random, the employee <u>must</u> admit to drug or alcohol use prior to the test.

7.  WHAT IF THE EMPLOYEE ADMITS TO ALCOHOL OR DRUG USE PRIOR TO THE TEST?

Advise the employee that he/she, if eligible, has the option of electing rehabilitation, at his/her own expense, prior to taking the test. The supervisor notes the employee's request on the Observation/Incident report and proceeds with the collection/test.

8.  IF THE SUPERVISOR IS INFORMED THAT THE EMPLOYEE IS NOT RELEASED TO RETURN TO WORK FOLLOWING A DRUG AND ALCOHOL TEST, CAN THE SUPERVISOR TERMINATE THE EMPLOYEE'S EMPLOYMENT THEN AND THERE FOR VIOLATING DISTRICT POLICY?

No.

## F.  RETURN TO WORK

An employee who fails to pass a Reasonable Cause or Random selection drug or alcohol test (0.04% or greater) will be directed to the Employee Services Manager for an evaluation. The Employee Services Manager will determine what, if anything, the employee must do regarding rehabilitation and when the employee may be able to return to work.

Following the successful completion of drug or alcohol rehabilitation, Voluntary Self-Referral or Employee-Paid, the employee will be required to sign a Return to Work Agreement and submit to a return to work drug and alcohol tests. The employee will be responsible to adhere to specific rules and regulations which are part of the Return to Work Agreement and to submit to the prescribed announced and unannounced periodic drug and alcohol testing.

PROCEDURES:

1.  The Employee Services Manager will monitor the employee while in the rehabilitation program.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

20

BART  000205

A.    RELEASE: The Employee Services Manager will determine the employee's successful completion of treatment and release to work. The Employee Services Manager is charged with the responsibility for determining whether or not the employee has successfully met the terms and conditions of the program.

B.    TESTING: Upon completion of the recommended treatment, the employee will be scheduled by the Employee Services Manager for a return to work drug and alcohol test. Upon confirmation of a negative test result for both drugs and alcohol, the employee will be scheduled for return to work. The employee must pass the tests before returning to work.

C.    RETURN TO WORK AGREEMENT: Following completion of the recommended treatment, the Employee Services Manager will develop a Return to Work Agreement which the employee is required to sign. This Return to Work Agreement codifies the terms and conditions established by the Employee Services Manager, including aftercare treatment and periodic drug and alcohol testing, for safely and confidentially returning to work. The Agreement will be coordinated by the Employee Services Manager, the employee's union representative (if applicable), Labor Relations and the employee. The Employee Services Manager will monitor adherence to the Agreement.

2.    The employee must successfully adhere to the Rehabilitation and Return to Work Agreements. If the employee violates the terms and conditions of the Rehabilitation or Return to Work Agreements, the employee will be subject to disciplinary action in accordance with the Return to Work Agreement, up to and including discharge from employment.

G.    **FOLLOW UP TESTING**

Following successful completion of a recommended rehabilitation program, whether as a result of voluntary self-referral or employee-paid rehabilitation, or a positive drug or alcohol test under reasonable cause or random drug and alcohol testing, the employee will be enrolled in a follow up/aftercare program for continued support and monitoring.

The employee will be required to sign a Return to Work Agreement and submit to periodic announced and unannounced drug and alcohol tests.

PROCEDURES:

1.    A minimum of six (6) follow-up tests in the first twelve (12) months is required after a positive drug test result and will be part of the terms of return to work.

2.    The employee will be subject to periodic testing for up to 60 months after his/her return to work in a safety sensitive position following a positive Reasonable Cause or Random

BART 000206

selection test. The Employee Services Manager determines the length of time the follow up testing will continue.   Follow up testing will not extend beyond 60 months.

3.    Follow up testing will be for drugs and alcohol below an 0.02% concentration.

4.    The employee must successfully adhere to the Rehabilitation and Return to Work Agreements.  If the employee violates the terms and conditions of the Rehabilitation or Return to Work Agreements, the employee will be subject to disciplinary action in accordance with the Return to Work Agreement, up to and including discharge from employment.

5.    Follow up testing, for safety sensitive employees, is not a replacement for random selection.  Employees who perform safety sensitive functions will be subject to random testing selection in addition to whatever announced and unannounced periodic testing may be conducted under the follow up testing procedures.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR RETURN TO WORK AND FOLLOW UP TESTING

1.    Paperwork regarding an employee's return to work following either positive drug or alcohol testing or rehabilitation will be in the possession of the Employee Services Manager.  The Return to Work Agreement will be maintained by the parties to the Agreement.

2.    The Employee Services Manager will be responsible for coordinating and monitoring the Aftercare program.  The Employee Services Manager is also charged with the responsibility of coordinating release of the employee once the Rehabilitation program is successfully completed.  The Employee Services Manager will develop the aftercare/follow up plan, including follow-up testing, and determine when the employee can return to work.

3.    It is the responsibility of the treatment facility to report to the Employee Services Manager any non-adherence to the aftercare/follow up plan.

## MOST COMMONLY ASKED QUESTIONS PERTAINING TO RETURN TO WORK/FOLLOW UP TESTING

1.    AT THE END OF THE REHABILITATION AND AFTERCARE PROGRAM AND RETURN TO WORK PROGRAM, WILL THE EMPLOYEE SERVICES MANAGER STILL MONITOR THE EMPLOYEE?

       No,  however the employee is encouraged to continue an outpatient program on their own after that time.

2.    WHO MAKES THE DECISION ABOUT THE AFTERCARE PROGRAM?

       The Employee Services Manager will determine the Aftercare plan, including follow-up testing.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART    000207

3.    CAN AN EMPLOYEE USE WORK TIME TO COMPLY WITH THE RETURN TO
WORK AGREEMENT REQUIREMENTS?

The employee is encouraged to meet his/her aftercare requirements on his/her own time,
however, in special circumstances work time may be necessary to fulfill the aftercare
obligation. Release from work must be approved in advance by the Employee Services
Manager and the Department Head.

4.    WILL SOMEONE GO TO THE EMPLOYEE'S WORK SITE TO DO THE PERIODIC
DRUG AND ALCOHOL TESTS REQUIRED UNDER THE RETURN TO WORK
AGREEMENT?

Usually the employee will be advised to go to the treatment facility or collection site for the
collection and testing, however there may be times when the collector may come to the work
site for a drug or alcohol test. If this occurs, it will be conducted with the greatest amount
of privacy for the employee.

H.    **VOLUNTARY SELF-REFERRAL FOR SUBSTANCE ABUSE REHABILITATION**

An employee who has a drug and/or alcohol problem and has not been selected for Reasonable Cause,
Random Selection or Post-Accident Testing can voluntarily refer him/herself to the District's
Substance Abuse Program for treatment through the Employee Services Manager. The Employee
Services Manager will evaluate the employee and make a specific determination of appropriate
treatment. An employee pursuant to this program, who is in a rehabilitation or aftercare program, or
who has completed two (2) rehabilitation programs, may not elect further rehabilitation under this
program.

PROCEDURES

1.    Once an employee voluntarily self refers, the Employee Services Manager will remove the
employee from performing his/her job pending an evaluation. The employee will remain in
a full pay status during the evaluation and treatment program.

2.    Employee signs the Rehabilitation Agreement.

3.    Pending results of the evaluation, the Employee Services Manager will refer the employee,
to a supervised, District approved, Rehabilitation Program, which may include in-patient
hospital treatment or an outpatient program.

4.    The Employee Services Manager shall notify the Department Head that the employee is being
removed from work on a paid status, and his/her length of absence.

5.    If recommended by the Employee Services Manager for in-patient treatment, the employee
will have up to 60 days to complete the rehabilitation. The Employee Services Manager may
extend treatment for an additional 30 days, if indicated.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000208

6.    All costs arising from a District approved Rehabilitation Program and/or Aftercare Program will be borne by the District.

7.    If the Employee Services Manager certifies that the employee has successfully completed the rehabilitation program, the employee will be placed in an Aftercare Program. During this time the employee will be subject to announced and unannounced periodic drug tests as defined under the "Follow-up Testing" section of these procedures. The terms and conditions of the Aftercare Program will be determined on an individual case-by-case basis, and the employee will be required to sign a Return to Work Agreement acknowledging that he or she will abide by those terms and conditions.

8.    The employee may be permitted to return to work in his/her job classification during the Aftercare or during any other outpatient program which will be monitored by the Employee Services Manager.

9.    The employee must successfully adhere to the terms and conditions of the Rehabilitation Programs. If the employee violates the terms and conditions of the Rehabilitation or Return-to-Work Agreement, the employee will be subject to disciplinary action in accordance with the terms of these agreements.

10.   An employee who is under investigation for an extreme case violation of District policy, for which the department has moved for discharge from employment, shall not be eligible for either the Voluntary Self-Referral (District paid) or Employee Paid Rehabilitation option or job protection, unless or until the disciplinary process is concluded and the employee is exonerated of the extreme case charge.

      The charging department must make the decision to move for discharge or a lessor discipline within twelve (12) days following the test for which the employee may have sought rehabilitation. If the department does not move for discharge within twelve (12) days of the test, or if the department moves for a lessor discipline, the employee may elect the rehabilitation option, providing the employee is other wise eligible. Discipline shall go forward notwithstanding the employee's eligibility for rehabilitation.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR VOLUNTARY SELF-REFERRAL

1.    The Employee Services Manager will coordinate the paperwork and tasks related to enrollment in a Voluntary Rehabilitation and Aftercare Program. This includes:

   •    arranging for all District paid direct costs
   •    advising supervision that the employee is being removed from work on a paid status
   •    arranging for paid administrative leave of absence
   •    coordinating the employee's return to work.

2.    If there is a violation of the Rehabilitation or Return-to-Work Agreement, disciplinary action will be administered by the Department Head.

Adopted: 5/90
Revised: 2/95
Revised: 10/99                                24

BART  000209

MOST COMMONLY ASKED QUESTIONS PERTAINING TO VOLUNTARY SELF-REFERRAL

1.   CAN THE EMPLOYEE RETURN TO HIS/HER SAME JOB ONCE A VOLUNTARY REHABILITATION PROGRAM HAS BEEN COMPLETED?

Yes. The employee will be able to return to the same job. The employee may return, in consultation with the Employee Services Manager, during an out-patient program or during the Aftercare phase.

2.   HOW CAN AN EMPLOYEE BE ASSURED OF CONFIDENTIALITY IF SHE/HE VOLUNTARILY REFERS?

The Employee Services Manager will handle the coordination of procedures and paper work. The Department Head will only be informed that the employee is on paid administrative leave and the expected date of return.

3.   WILL THE EMPLOYEE BE RELEASED FROM WORK WITH PAY TO COMPLY WITH THE REQUIREMENTS FOR RETURN TO WORK AGREEMENT (I.E., URINE TESTING AFTERCARE MEETINGS)?

Yes. Although, to the extent possible, the employee shall comply with the requirements of his/her Return to Work Agreement on his/her own time. If this is not possible, arrangements may be made for employee compliance during working hours for a limited period. Release from work must be approved in advance by the Employee Services Manager and the Department Head.

I.   **EMPLOYEE PAID REHABILITATION**

An employee who has requested rehabilitation during a drug or alcohol test for reasonable cause or random, or whose first breath alcohol test under random selection is positive for alcohol at a concentration of 0.04% or greater, if otherwise eligible, may be referred to a District approved rehabilitation program for drug or alcohol problems. The employee will be directed to the Employee Services Manager for evaluation and determination of appropriate treatment. An employee pursuant to this program, who is in rehabilitation, or who has completed two (2) rehabilitation programs, may not elect further rehabilitation under this program and will be deemed ineligible for the employee paid rehabilitation option.

PROCEDURES

1.   The first time an employee tests positive on a random test for either drugs or alcohol, 0.04% or greater, the employee may elect the employee paid rehabilitation option without having admitted to drug or alcohol use prior to the test. The Employee Services Manager will conduct an evaluation of the employee once the test results are known and will inform the supervisor of the pay status of the employee and possible return to work date, if known.

Adopted:  5/90
Revised:  2/95
Revised:  10/99

BART 000210

2.  Once an employee has admitted to drug or alcohol use during the testing/collection process, the employee will be directed to the Employee Services Manager for evaluation.

3.  The evaluation will be conducted prior to receipt of the drug test results.

4.  If treatment is indicated, various options will be discussed with the employee which may include in-patient, day treatment or out-patient care. An interview with the selected treatment facility will be arranged. The employee is in an unpaid status during the evaluation and treatment period but may use accrued sick leave or vacation.

5.  The employee will be advised of the cost of the rehabilitation program and the need to complete final financial arrangements prior to consideration of return to work.

6.  An employee who is under investigation for an extreme case violation of District policy, for which the department has made the decision to move for discharge from employment shall not be eligible for District paid rehabilitation or job protection, unless or until the disciplinary process is concluded and the employee is exonerated of the extreme case charge.

    The charging department must make the decision to move for discharge or a lessor discipline within twelve (12) days following the test for which the employee may have sought rehabilitation. If the department does not move for discharge within twelve (12) days of the test, or if the department moves for a lessor discipline, the employee may elect the rehabilitation option, providing the employee is otherwise eligible. Discipline, if any, shall go forward notwithstanding the employee's eligibility for rehabilitation.

7.  If both the alcohol and the drug test results are negative, the employee will be encouraged to enter the recommended rehabilitation program. If the employee elects to enter rehabilitation, he/she may do so under the District's Voluntary Self-Referral program. All costs of the program will be borne by the District and the Employee Services Manager will notify the Department head that the employee is to be placed on administrative leave.

8.  If the employee does not elect to enter Voluntary Self-Referral following a negative drug and alcohol test, although the employee has admitted to using drugs or alcohol, the employee will be released to return to work.

9.  If an employee tests positive for breath alcohol (0.04% or greater) the urine sample collection for drug testing continues. The supervisor is notified to place the employee on unpaid status and direct the employee to the Employee Services Manager for evaluation. An employee who tests positive for drugs or alcohol (above 0.04%), who has tested positive on a prior random test and has not admitted to drug or alcohol use and has not requested rehabilitation, will be subject to disciplinary action up to and including termination for violation of the District's Substance Abuse Program. The employee is directed to the Employee Services Manager for evaluation following a positive test result, regardless of disciplinary action.

10. The Employee Services Manager will certify when the employee is released to return to work. The employee must test negative on a return to work drug and alcohol test and sign a Return to Work Agreement acknowledging and agreeing to the terms and conditions of the

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000211

Agreement prior to a return to duty. The employee will be entered into an aftercare program and will be subject to announced and unannounced periodic drug and alcohol testing for a period prescribed by the Employee Services Manager, not to exceed sixty (60) months.

11. The employee must adhere to the terms and conditions of the Return to Work Agreement. If the employee violates the terms or conditions of the Return to Work Agreement, the employee will be subject to disciplinary action in accordance with the terms of the Agreement.

12. The Employee Services Manager will notify the Department head of the employee's date of return to work.

13. Costs for the required aftercare and drug and alcohol testing following the return to work will be borne by the District.

## REPORTING AND CONFIDENTIALITY PROCEDURES FOR EMPLOYEE-PAID REHABILITATION

1. The Employee Services Manager will coordinate the paperwork and tasks related to enrollment in Employee-Paid Rehabilitation and Aftercare/Follow-up. This includes:

   • conducting an employee evaluation and establishing an individualized rehabilitation plan, when indicated.

   • advising the Department head that the employee is eligible to use accrued sick leave or vacation for any time off work

   • upon satisfactory completion of rehabilitation, establishing a Return to Work Agreement clarifying the terms of aftercare and the follow-up program.

   • coordinating the employee's return to work.

   • following the employee's adherence to the terms of return to work, including scheduling unannounced drug and alcohol testing.

2. If there is a violation of the Return to Work Agreement, the Department Head will administer disciplinary action.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

27

BART 000212

## MOST COMMONLY ASKED QUESTIONS PERTAINING TO EMPLOYEE-PAID REHABILITATION

1.  CAN THE EMPLOYEE RETURN TO HIS/HER SAME JOB ONCE AN EMPLOYEE-PAID REHABILITATION PROGRAM HAS BEEN COMPLETED?

    Yes. The employee will be able to return to the same job. The Employee Services Manager will determine if the employee may return to work during participation in an outpatient or aftercare program.

2.  HOW CAN AN EMPLOYEE BE ASSURED OF CONFIDENTIALITY IF HE/SHE IS REFERRED TO REHABILITATION FOLLOWING A DRUG OR ALCOHOL TEST?

    Only the collection agent, the Medical Review Officer and the Employee Services Manager know the results of the drug or alcohol test. The Employee Services Manager handles the coordination of procedures and paper work. The Department Head is informed only of the pay status of the employee and the expected date of return to work, not the test results or details of rehabilitation.

3.  WILL THE EMPLOYEE BE RELEASED FROM WORK WITH PAY TO COMPLY WITH THE REQUIREMENTS FOR RETURN TO WORK AGREEMENT (i.e. URINE OR BREATH TESTING, AFTERCARE MEETINGS)?

    Yes. Although, to the extent possible, the employee shall comply with the requirements of the Return to Work Agreement on his/her own time. If this is not possible, arrangements may be made for employee compliance during working hours if necessary, for a limited time. Release from work must be approved in advance by the Employee Services Manager and the Department Head.

Adopted: 5/90
Revised: 2/95
Revised: 10/99

BART 000213

# SAGET EXHIBIT B

**B A R T**

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
300 Lakeside Drive, P.O. Box 12688
Oakland, CA 94604-2688
(510) 464-6000

December 8, 2004

James Fang
PRESIDENT

Dan Richard
VICE-PRESIDENT

Thomas E. Margro
GENERAL MANAGER

DIRECTORS

Dan Richard
1ST DISTRICT

Joel Keller
2ND DISTRICT

Roy Nakadegawa
3RD DISTRICT

Carole Ward Allen
4TH DISTRICT

Peter W. Snyder
5TH DISTRICT

Thomas M. Blalock
6TH DISTRICT

Lynette Sweet
7TH DISTRICT

James Fang
8TH DISTRICT

Tom Radulovich
9TH DISTRICT

Ms Roxanne Sanchez
Service Employees International, Local 790
Oakland, CA 94610

Dear Ms. Sanchez:

This letter shall constitute a rehabilitation agreement between Mr. Paul Melker, Transit Vehicle Car Cleaner, SEIU Local 790, and the Bay Area Rapid Transit District (hereinafter "Rehabilitation Agreement"), setting forth the terms and conditions of Paul Melker entering the District's Voluntary Substance Abuse Rehabilitation Program on December 3, 2004.

I, Paul Melker, with the concurrence of my union representative, agree to the following:

(1) To execute appropriate authorizations for use and disclosure of medical information to permit the District's authorized treatment facility, New Bridge, to disclose my medical information to the District and to permit the District to disclose my medical information to the Employee Services Manager &/or Senior Employee Services Representative, Margaret Saget, for the purposes of administering the substance abuse program and determining my fitness for duty.

To keep such authorizations current during all phases of the Substance Abuse Rehabilitation Program as it pertains to me, including the aftercare, monitoring and disciplinary phases, if any.

(2) I recognize that I have a chemical dependency problem. The Substance Abuse Rehabilitation Program of New Bridge has evaluated my particular circumstances, and has recommended that I be referred for Inpatient treatment to assist in my recovery.

(3) I agree to execute an admission agreement and to enter into New Bridge' Rehabilitation Program on December 3, 2004; and to execute any treatment agreements required by the rehabilitation program, to fully adhere to the terms and conditions of the treatment agreements and to fully participate in the treatment program.

I understand that my treatment agreement is subject to reevaluation and/or modification by New Bridge with the concurrence of the Employee Services staff

1

SAGET EXHIBIT B

during the course of my treatment.

(4)    Without limiting the foregoing, I agree to refrain from the use of all prohibited substances and alcohol under the program and to participate fully in all activities assigned or required by New Bridge as part of the treatment program including, but not limited to, individual, group and family counseling sessions, 12-step meetings, educational sessions and recreational and other activities as assigned. I agree to participate in case conferences which can be called at the request of the treatment staff, District Employee Services Manager, Senior Employee Services Representative or myself.

(5)    I understand that my initial enrollment in the Rehabilitation Program will be for a four week period. I understand that the initial enrollment period may be extended by New Bridge and approved by the District for up to an additional 90 days total. However, I further understand that my entitlement to benefits under the Voluntary Rehabilitation Program is contingent upon my compliance with the Program and if in the judgement of the Rehabilitation Program staff or the District ESA, I fail to comply, my benefits under the District Program will be revoked.

(6)    I agree to successfully complete the New Bridge Treatment Program, as evidenced by a final written evaluation to that effect to be furnished by New Bridge directly to the District.

(7)    I agree that any one of the following shall be grounds for termination, and the District may immediately suspend me without pay and without a prior hearing and implement discharge proceedings for:

- .    failure to participate fully in the New Bridge Rehabilitation Program

- .    failure to successfully complete the Program

- .    violation of any terms or conditions of the Treatment Contract

Any such disciplinary action will be subject to the grievance procedure of the Collective Bargaining Agreement.

(8)    I understand that should I successfully complete the New Bridge Rehabilitation Program and should the District receive a written evaluation to that effect I will be expected to enter into a written agreement (Monitoring and Re-Entry Agreement) requiring adherence to aftercare and monitoring terms and conditions recommended by New Bridge and approved by the District's Employee Services Manager which may include, but not be limited to, periodic scheduled and unscheduled urinalysis for the presence of prohibited drugs or alcohol for a period of time recommended by the

2

BART    000228

District's Employee Services Manager.

My ultimate return to work will be contingent upon my having successfully adhered to the terms of the Rehabilitation Agreement, testing negative on a return to work drug and alcohol test, being otherwise fit for duty and upon my entering into a written Return to Work Agreement which will provide that failure to adhere to its terms will result in termination of my employment with the District.

CONCUR FOR DISTRICT:                         CONCUR FOR UNION:

_Margaret Saget_ 12/13/04                    _____
Margaret Saget           Date                Roxanne Sanchez         Date
Sr. Employee Services Representative         President, SEIU, Local 790

                                             _Paul Melker_ 12/13/04
_____
Michelle Tellez          Date                Paul Melker             Date
Labor Relations Representative               Employee

3

BART     000229